Lee *vs.* West.

47   311
o120  106

SANDERS W. LEE, plaintiff in error, *vs.* PHILLIP WEST, defendant in error.

1. Where laborers were employed by a planter in January, 1868, and shortly thereafter deserted him and hired themselves to the agent of another, and the first employer arrested them and lodged them in jail, under the Court Contract Act, from which confinement the freedman's bureau discharged them, and they then, with the sanction of the bureau, hired themselves to the agent of the second employer, who retained them, and some two months after informed his principal of his action, who then, for the first time, ratified the hiring, having previously instructed his agent to hire no hands employed by others, such

ratification does not make the latter guilty of enticing away the servants of another, so as to render him liable in a suit for damages to the first employer.

2. Where two are sued as joint trespassers, one of whom resides without the county in which the suit is brought, the Court has *prima facie* jurisdiction as to both, but if the evidence show that the party residing in the county in which suit is brought is not a co-trespasser with the other, the jury, under the instruction of the Court, should find in favor of the non-resident, no matter how much the evidence may show his separate liability for the trespass.

3. The measure of damages for enticing away the servant of another, who is hired for the year, where that other fails to supply the servant's place, is the direct loss suffered, and the average net profits that were made by men of fair business capacity, out of the labor of such a servant during the year for which the enticed servant was hired. Tried by this rule the verdict is excessive in this case.

4. If two are sued as joint trespassers, one of whom resides out of the county in which suit is brought, a verdict had against the defendants, and a new trial moved for, the Court should grant it as to both or neither; but if he grant it as to the one who resides out of the county, and the new trial is had, without exceptions taken for that cause, the defendant in the new trial is estopped from availing himself of the error, after the second trial, and a second verdict against him.

Employing servants of another. Ratification. Venue. Joint trespassers. Measure of damages. Estoppel. Before Judge CLARK. Lee Superior Court. March Term, 1872.

Phillip West brought trespass on the case against Sanders W. Lee and Thurman M. Clements, for employing and enticing away servants in his employ, by which he had been damaged $5,000 00. Clements pleaded not guilty. Lee demurred to the declaration upon the ground that he was alleged to be a citizen of the county of DeKalb, and suit, therefore, was not maintainable against him in the county of Lee. The demurrer was overruled. The jury returned a verdict for the plaintiff for the sum of $5,000 00. A new trial was granted by the Court as to the defendant, Lee. To the second trial Lee pleaded: "That at the last term of the Court, this case was tried and a verdict was rendered in favor of the plaintiff for $5,000 00 damages; that, thereupon, he, by his counsel, moved for a new trial, and the Court set aside said verdict and granted

Lee *vs*. West.

a new trial as to this defendant, but refused the same as to Clements. While said judgment and verdict is now in full force and unreversed against said Clements in favor of plaintiff, this defendant sets up said judgment as a full bar and satisfaction of said cause of action set forth. And further says that he is still a citizen and resident of the county of DeKalb; that this Court has no jurisdiction of said case to try his liability separately as to said cause of action."

The special plea was overruled.

The jury returned the following verdict: "We, the jury, find for the plaintiff against the defendant, S. W. Lee, $5,000 00 damages, and any payment made on this will be a credit to Clements on a judgment for like amount in favor of plaintiff against him, and any payment made by Clements on the judgment against him in this Court, for like amount, shall be a credit on this to the amount of the payment, with costs of suit."

It appeared from the evidence that the laborers were hired by plaintiff to work on his plantation during the year 1868; that they left without his consent the last of January, 1868; that they were arrested and carried before the County Court, and ordered to jail; they were released to go to plaintiff's plantation, but returned to Lee's; that the laborers remained on Lee's place during the year 1868; that plaintiff failed to make a crop for want of labor, and spent $500 00 in time and money in endeavoring to supply himself; that the hands would have made, in 1868, four or five, five hundred pound bales of cotton and one hundred bushels of corn to the hand; that cotton was worth after Christmas 26½ cents, and corn from $1 25 to $1 50 per bushel; that defendant, Clements, was regarded as superintendent of Lee's place; that the laborers were arrested a second time and sent to jail, afterwards released and returned to Lee's; that the hands were released by the Freedmen's Bureau Agent, at Albany; that plaintiff did not make any demand on Lee for the hands, nor give any notice, except by sending the bailiff for them; that in the opinion of the plaintiff, the hands would not have left if Clements had not

hired them; that Clements hired the hands for Lee, and Lee knew they were on the place in February; that Clements informed Lee that the hands had been arrested and that West claimed them; that Lee stated that the hands might stay; that Clements had authority to hire all the hands he could for Lee; that when the laborers were arrested Clements went to see the Bureau Agent at Albany, who informed him that he had given an order for their discharge; that Lee was living in Atlanta at the time the laborers were employed by Clements; that Lee did not know that West claimed the laborers; that Lee instructed Clements not to hire anybody's hands, and not to hire at all, unless legally; that Lee did not know of West's claim to the hands for two months after they were employed by Clements.

The Court charged the jury as follows:

"The defendants, Clements and Lee, are sued in the same action for damages caused by enticing away the servants and laborers of Phillip West, the plaintiff, during the term of their service to West. The question before you is not as to the liability of Clements, except so far as it may be necessary to pass upon his liability in determining the liability of Lee. This case, so far as Clements is concerned, has been disposed of by the verdict of the jury at the last term of this Court. Is Lee liable in damages for enticing away these servants? If West had the hands in possession on his farm under a contract of hiring for the year 1868, and Clements, knowing they were so hired, employed or enticed them away from the employment of West, then Clements is liable to the extent of the damage sustained by West. If Clements was the agent, overseer or superintendent of Lee, and as such was authorized by Lee to hire hands for the year 1868, the presumption of law is, that as such agent, overseer or superintendent, he was only authorized to hire servants in a fair and legitimate way, and not in violation of law. A principal is only bound by the acts of his agent within the scope of his authority. In the absence of proof you are not to presume that the principal gave authority to his agent to do an unlawful act. If the

Lee vs. West.

agent, while in the discharge of his duties, do an unlawful act, such as hiring servants illegally, the agent alone is liable, and not the principal, unless it appear that the principal authorized the unlawful act, or afterwards, when informed of it, ratified it. If Clements did hire these servants for the year 1868, knowing that they were in the employ of West for that year, and if Lee was subsequently informed of West's claim, and of all the accompanying facts about the illegal hiring, and Lee consented to it and ratified it, Lee is as guilty as Clements, and his liability is co-extensive with the liability of Clements, and commences with the date of the illegal hiring. It is not necessary to make Clements liable that he should have known absolutely that the servants were in the employment of West. It is sufficient if the circumstances were such as would have put a prudent man on inquiry. If he had good reasons for believing that West had hired the servants, it was his duty to have abstained from consummating his contract until he had made inquiry from West about it. If he recklessly and hastily hired them, having reasonable grounds to suppose that they were under contract with West, without making inquiry of West, he is liable, and Lee's liability depends upon whether he was subsequently informed of all the facts and circumstances, and consented to and ratified Clements' act. Clements may have hired the servants of West without notice of West's contract, yet, if, upon notice within a reasonable time thereafter, he failed to give them up, and used any means to detain them, he is liable, and Lee is liable if he subsequently came into possession of the facts, and consented to or ratified it. If West was guilty of negligence in not giving notice to Clements after he knew that Clements had hired the servants, he is to be presumed as having abandoned his contract, and as acquiescing in the act of Clements, and is not entitled to damages. The rule is the reverse, if as soon as he learned the facts, he took steps to reclaim the servants. If Howard, the agent of the Freedmen's Bureau, passed upon the rights of West and set aside his contract, and absolved the servants from all obligation under the contract,

Lee *vs.* West.

then West is bound by the order of the Bureau Agent, and is not entitled to damages against Lee. If he discharged the servants from arrest and turned them loose to go where they pleased, leaving all the parties to their rights and remedies under the law, without more, such an order does not absolve the servants from their obligation to West, nor does it discharge Clements and Lee from any liability they may have incurred by reason of having illegally hired them.

The measure of damages is what the services of the servants would have been reasonably worth, to be estimated by what a reasonably good farmer would have made with the servants during the year 1868, after deducting expenses of the farm for the year, adding to the net profits such reasonable expenses, if any, incurred by West in seeking to get other hands to supply their place. If you find a verdict against Lee for any sum, you should stipulate and decree in your verdict, that whatever amount may be paid on the judgment against Clements, should be a credit on the judgment against Lee, and whatever amount is paid on the judgment against Lee, should go as a credit on the judgment against Clements. Such a form of verdict is necessary to protect the rights of defendants in the event you find a verdict against Lee."

A motion was made for a new trial upon numerous grounds; amongst them, that the Court erred in overruling the plea to the jurisdiction; that the charge was contrary to law; that the verdict was contrary to the charge; that the verdict was contrary to the evidence.

The motion was overruled, and the plaintiff in error excepted and assigns said ruling as error.

VASON & DAVIS; LYON & IRVIN; C. T. GOODE, for plaintiff in error.

W. A. HAWKINS; F. H. WEST; CLARK & GOSS, for defendant.

Lee *vs.* West.

MONTGOMERY, Judge.

The evidence in this case shows that Clements, the agent of Lee, hired the servants of West, the plaintiff below, without any knowledge, on his part, that they were under contract to West. A few days afterwards, West had them arrested, but, it seems, discharged them, upon their promising to return to his plantation. The hands, instead of going to West's place, returned to Lee's. They were rearrested, at West's instance, lodged in jail, and from thence discharged by the Freedman's Bureau officer at Albany, Howard, by name. They were then, with Howard's sanction, hired again by Clements, as the agent of Lee. These transactions occurred in January. Lee had no knowledge of them until April, when Clements informed him of them. He replied, that under the facts, as detailed above, the negroes might remain on his place. He had, previously to the occurrence, instructed Clements not to hire hands under contract to others.

It is unnecessary to consider whether Clements is excusable for not making more diligent inquiry in the first instance, before hiring. If the hiring under the sanction of the Freedman's Bureau was legitimate, Lee is not responsible, for that is the only contract he can be said to have ratified. West's contract with the negroes was a Court contract, at least it is so stated on its face, and was so treated in argument, though there is no evidence of its having been filed in the office of the County Court. Assuming it to have been a Court contract, West seems to have taken the course pointed out by the law for its enforcement, to-wit: by attachment. With this enforcement, the agent of the Bureau saw proper to interfere and discharge the negroes from confinement. Whether he would be liable to West or not, is a question not now before us. Upon the principle of *inter arma leges silent,* and for the reason that he was acting in a *quasi* military character, in subjugated territory, perhaps he would not. But what was to be done? Were the negroes to be compelled to roam as vagabonds over the country for the year, because they would not

fulfill their contract with West, and the military authorities would not permit him to enforce compliance in the way pointed out by law? Surely, this would be seriously detrimental to the best interests of the State, already very grievously suffering from this evil. Under the facts of this case, as they now appear by the evidence, we do not think Lee's ratification of the hiring was such as to render him liable to West in damages.

2. As the case must go back, and another trial may be had, in which the evidence may be different, we will dispose of other points made by the record; and, first, we think that the Court *prima facie* had jurisdiction of both defendants in the joint suit for trespass, although Lee lived out of the county in which the suit was brought. If the evidence shows that the non-resident defendant was not a co-trespasser with the resident defendant, the jury, under the instruction of the Court, should find in favor of the former,' no matter how much the evidence may show his separate liability for the trespass—the plaintiff, of course, retaining his right to dismiss, as to the non-resident, at any time before verdict.

3. We think the correct rule of damages, when one person entices away the servant of another, is the direct loss legitimately incurred in endeavoring to replace the servant, and the average net profits that were made by men of fair business capacity out of the labors of such a servant during the year for which the servant was hired. Tried by this rule, this verdict is certainly excessive. The evidence shows that the servants hired were equal to eight good hands. The verdict gives the plaintiff more than $600 as net profits for one year on a hand, who would, probably, before the war, have sold for about $1,000. The gross value of what the evidence shows the hands might have made with good farming, was some $600 or $700 per hand. By the contract, they were to get one-third of this, and from the remaining two-thirds must be deducted all the expenses of carrying on the farm except the food of the hands, which, by the contract, they were to pay for, out of their one-third part of the crop.

4. There was error in granting a new trial as to Lee and refusing it as to Clements. But to avail himself of it, Lee should have excepted at the time. It is too late to do so after the second trial and verdict is had. It is analogous to a suit against a single defendant out of the county of his residence. If he chooses to appear and plead to the merits, he cannot take advantage of the want of jurisdiction in the Court after verdict. Nor can Lee set up the judgment against Clements as a bar to further proceedings against himself. A party injured may sometimes proceed against master and servant successively as well as jointly : 2 Hilliard on Torts, 522-3.

Judgment reversed.