## CRANE *v.* PATTON.

Opinion delivered February 25, 1893.

1. *Construction of contract—Lease.*

A contract in writing whereby the owner of land agrees to rent it to another for a consideration named, and to permit him to cut all the growing timber therefrom, and to appropriate such timber to his own use, is a contract of lease and not a license.

2. *Master and servant—Damages for causing servant to leave.*

Where, by the terms of a lease, the lessee was placed in possession of the leased premises and was authorized during the period of the lease to cut, remove and appropriate all the timber growing thereon, and a subsequent purchaser of the land, having notice of the lease, willfully prevented the lessee from cutting and removing the timber by making threats of prosecution that induced the lessee's servants to leave his employment and that dissuaded others from entering his service, so that he lost the right to remove the timber, *held*, that the lessee is entitled to recover as damages what the timber would have been worth, less the expense of removing it.

Appeal from Benton Circuit Court.

EDWARD S. MCDANIEL, Judge.

T. J. Patton brought suit against J. E. Crane to recover damages sustained by being prevented from cutting timber on certain land. The complaint states the following facts : '' The plaintiff alleges that on the 15th day of February, 1889, he entered into a contract in writing with one Mary B. Paddock for the use and possession of a certain tract of land lying southwest and near the city of Siloam Springs in Benton county and in the State of Arkansas, from said day until the 1st day of January, 1890. That in pursuance of said contract, and for a valuable consideration, the said Mary B. Paddock, who was then lawfully seized and in the peaceable possession of said lands, placed this plaintiff in the possession thereof.

"That it was understood and expressly agreed by and between plaintiff and the said Mary B. Paddock, at the time they entered into said contract, that the plaintiff, in consideration of the use and possession of said premises for the term aforesaid, and for certain other valuable rights and privileges in said contract mentioned, was to pay the taxes assessed against said lands for the year 1888, and to cut off all the timber and all the brush (except where there was no timber) on all the land south of a certain field to a certain prairie by the first day of March, 1890, and the plaintiff, in consideration of the labor to be performed by him and the money to be expended by him in the payment of the taxes as aforesaid, was to have the right to cut, carry away and appropriate to his own use all of the timber upon said lands, which he alleges was of great value, to-wit: the sum of three hundred dollars over and above all costs of cutting and carrying away. And this plaintiff alleges that he paid all the taxes assessed against said lands for the year 1888, and endeavored in good faith to perform the labor he had agreed to do by cutting the brush and cutting down and removing the timber, which he here charges and alleges that he could and would have done, but for the wrongful, wilful and unlawful interference with his rights under said contract, by the said defendant as hereinafter set forth.

"That on account of the large quantity of timber and brush upon said lands, and the short time plaintiff had in which to cut and remove the same, it was impossible for him to perform said labor or to appropriate said timber, without the assistance of a large number of hands. That, after plaintiff had employed hands to assist him as aforesaid and was proceeding to the execution of said contract on his part, the defendant in this suit came to the plaintiff and informed him that he had purchased said lands from the said Mary B. Paddock

and claimed and demanded the immediate possession thereof at a time soon after plaintiff had entered and long before his term had expired. That in 1888, and before said term had expired, defendant unlawfully, with force and arms, did enter upon said lands and, by threatening to cause plaintiff's employees to be arrested, prosecuted and imprisoned, did frighten, intimidate and drive away said employees from plaintiff's service as aforesaid, and did thereby wrongfully, forcibly and unlawfully deprive, delay and prevent the plaintiff from appropriating timber aforesaid to his own use, as by said contract he, the said plaintiff, had a right to do. And plaintiff alleges that, before the said defendant purchased said lands from the said Mary B. Paddock, if he did so purchase, he was fully advised and informed of all of plaintiff's rights in the premises, and that he purchased the same subject to all of plaintiff's rights as aforesaid. Plaintiff further alleges that by reason of the aforesaid wrongs and injuries inflicted by said defendant he was damaged in the sum of three hundred dollars. Wherefore plaintiff prays judgment for said sum of three hundred dollars for his damages and for all other proper relief."

The lease referred to in the opinion is as follows:

"FAYETTEVILLE, ARK., Feb. 15, 1889.

"This agreement made by and between Mary B. Paddock, of Fayetteville, Ark., of the first part, and T. J. Patton, of Siloam Springs, Ark., of the second part, witnesseth: That the party of the first part has rented to the party of the second part all her land lying southwest of Siloam Springs in Benton county, Ark., until the 1st day of January, 1890, for which the party of the second part agrees to pay the taxes for the year 1888 on said land, and to cut off all the timber and brush on all the land south of the field to the prairie, but the said Patton has until March, 1890, to do the above work, and

the said Patton is not to cut off the brush south and joining said field where there is no timber, and the said Patton is to have all the timber for cutting it off.

(SIGNED)     "MARY B. PADDOCK.
              "T. J. PATTON."

A demurrer to the complaint was overruled. Defendant answered, admitting the averments of the complaint, except that he denied that he had forcibly entered the land and driven away plaintiff's employees. Defendant's deed from Mrs. Paddock was dated July 19, 1889.

Over defendant's objections, the court instructed the jury as follows:

"1. The plaintiff under his written contract with Mary Paddock had the right to retain the possession of the land until the expiration of the time allowed by the terms of the contract, and to do all acts that were necessary to carry out the terms of said contract and secure to himself the benefits thereof free from any interference on the part of said Paddock or those holding under her or their agents."

"2. If the defendant at the time of his purchase from Paddock knew that plaintiff was in possession or control of the land, it was his duty to make reasonable inquiry as to what right or authority he had such possession and the extent of his rights on the land, and is chargeable with knowledge of whatever he might have learned by such inquiry."

"3. If you find from the evidence that while plaintiff was in possession of the land under his contract with Mrs. Paddock, the defendant himself or through his agents prevented the plaintiff from carrying out and performing his contract with Mrs. Paddock, by preventing any person or persons from working for the plaintiff by means of threats of prosecution, you will find for the plaintiff such damages as he may have sustained by reason of such interference."

"4. The measure of plaintiff's damages would be the net profits he may have been prevented from making under his contract with Mrs. Paddock by reason of the threats made by the defendant or his agents, not exceeding the amount claimed in the complaint. By such net profits I mean the market value of the timber less the expense of cutting and delivering the same in the market."

"5. If you find from the evidence that the plaintiff, or his agent, was prevented from carrying out the plaintiff's contract with Paddock by threats of prosecution made by Morris, and that Morris was at the time acting as the agent of the defendant, and was acting within the scope of his agency, then the defendant would be liable for such threats made by Morris to the same extent as if he had made the threats himself. If you find that certain hands of plaintiff were prevented from working on the land in question, it was his duty to use all reasonable efforts thereafter to procure other hands to do such work and thereby lessen the amount of his damages. If he could have procured other persons to do such work, then he can not recover for damages resulting from his failure to procure them."

The jury returned a verdict for plaintiff in the sum of $75. Defendant has appealed, and insists that the court erred in overruling the demurrer to the complaint and in the charge to the jury.

*E. P. Watson* for appellant.

1. Growing timber is part of the realty, and the title can only pass by deed. 1 Wash. Real Pr. pp. 13, 14; 3 *id.* 343, 347; Cooley, Torts, 304–5–6; Bishop, Cont. secs. 396, 1293–4; 2 Tenn. Ch. 232; 8 Am. & Eng. Enc. Law, p. 700.

2. The instrument was a mere license, and revocable at the pleasure of Mrs. Paddock, and the sale of the

land was a revocation. Tied. Real Prop. pp. 651 to 654 ; 1 Wash. Real Prop. pp. 13, 14 ; Cooley, Torts, p. 304.

3. Mere threats of prosecution or arrest, when unattended with force or violence, are not actionable. Cooley, Torts, pp. 29, 60, 61, 62. It must be alleged and proved that defendant wilfully maliciously and without reasonable or probable cause, and for the purpose of breaking up plaintiff's business, enticed away his employees, or by threats of personal violence, etc., drove them away, before a suit of this kind can be maintained. 70 N. C. 601 ; 22 Am. Rep. 475 ; 14 A. & E. Enc. Law, 802 ; 2 C. M. & R. p. 707 ; 77 N. C. 37 ; Wood on Mast. & Serv. sec. 239 ; 9 Abb. N. C. 393.

*L. H. McGill* for appellee.

1. Even if the instrument was a mere license, if the purchaser had notice of the written license, his purchase would not affect the rights of the licensee. 1 Wash. Real Pr. 14 ; 3 *id.* 14 ; Bish. Cont. secs. 1293–4 ; 13 A. & E. Enc. Law, 548–554 ; 17 Am. Rep. 591 and note.

2. But the contract was a written lease and passed the possession of the land. 1 Wash. R. P. 449 ; Tiedeman, Real Pr. secs. 178–9 ; 12 A. & E. Enc. Law, 976–7 ; 12 *id.* 983 and note 4.

3. Crane purchased the land subject to Patton's rights. 1 Wash. Real Pr. 517 ; 12 A. & E. Enc. Law, 683.

4. A person who knowingly induces a servant to leave the employ of his master, by persuasion, threats or other means, is liable to the master for the natural and necessary damages resulting from such wrongful act. Malice is only necessary in the sense that the act must be done with notice of the employment and without legal excuse. 14 A. & E. Enc. Law, 800, 802 ; 70 N. C. 601 ; 56 N. H. 456 ; 22 Am. Rep. 475 and notes ; 107 Mass. 555 ;

47 Ga. 311 ; 33 La. An. 1261 ; 66 Mich. 127; 11 Am. St. Rep. 466 and notes.

HEMINGWAY, J.    The writing sued upon passed the right of possession, and therefore created a lease and not a license.    *Tinsley* v. *Craige*, 54 Ark. 346.    The rights of the lessee are vested, not determinable at the will of the lessor ; and a sale during the term of the lease, to one having notice of it, could not extinguish it.    By the terms of the instrument the lessee had a right to cut, remove and appropriate the timber ; and if the defendant by his wrongful acts deprived him of the enjoyment of the right, he is liable to the extent of the injury— that is, for what the timber would have been worth when removed, less the expense of removing it.    And it is not necessary that such act should have been accompanied by force or violence ; but if the defendant, knowing of the right, wilfully prevented its enjoyment by making threats of prosecution that induced the lessee's servants to leave his employ and dissuaded others from entering his service, he is liable for the damage.    Schouler, Dom. Rel. sec. 487; Wood's Master & Servant, sec. 239; *Walker* v. *Cronin*, 107 Mass. 555; *Dickson* v. *Dickson*, 33 La. An. 1261; *Bixby* v. *Dunlap*, 22 Am. Rep. 475 and note ; *Lee* v. *West*, 47 Ga. 311.

It follows that the complaint stated a cause of action, and that the court's charge to the jury was correct; as the motion for a new trial presents no other question, the judgment is affirmed.