NORTH ARKANSAS TELEPHONE COMPANY *v.* STEINER.

Opinion delivered May 30, 1910.

1. MASTER AND SERVANT—DUTY TO WARN INEXPERIENCED SERVANT.—Where a plaintiff, a young and inexperienced lineman, was employed to re-

move the lines from a telephone pole, and was injured by the pole breaking at the ground, it was not error to charge the jury that if plaintiff, by reason of his youth and inexperience, did not know the danger of the situation, and defendant knew or should have known of his inexperience, it was defendant's duty to warn him of his danger. (Page 277.)

2. DAMAGES—EXCESSIVENESS.—Where plaintiff's right shoulder was dislocated, his left ankle badly torn, both bones of his right leg broken below the knee, where he suffered pain for two years, and where a physician testified that there was a diseased condition of his right limb which might cause lameness, a verdict for $3,850 damages was not excessive. (Page 278.)

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; affirmed.

*McDaniel & Dinsmore,* for appellant.

Appellee assumed the dangers incident to climbing the telephone poles when he entered the service. 70 Am. St. 244; 61 *Id.* 62; 72 Fed. 250.

*Walker & Walker,* for appellee.

If all the instructions can be read together as a harmonious whole, they should be so treated. 74 Ark. 377; *Id.* 458; 83 Ark. 61; 87 Ark. 396; 88 Ark. 433. Appellee being an inexperienced youth, it was the duty of appellant to instruct him concerning the dangers of his employment. 53 Ark. 117; 73 Ark. 49; 71 Ark. 55; 81 Ark. 247; 90 Ark. 407. The doctrine of assumed risks does not apply to employees of mature years. 56 Ark. 216; 71 Ark. 55; 84 Ark. 74.

HART, J. This is an appeal by the North Arkansas Telephone Company from a judgment recovered against it by A. F. Steiner, suing by M. A. Williams as his next friend, for damages for injuries suffered by him on account of the alleged negligence of the company in failing to warn and instruct him as to the dangers incident to his employment.

The injury was received on the 3d day of December, 1907, and Steiner was at that time 17 years old. He was in the service of the company as a lineman, and had worked in that capacity for about two weeks. He had, however, previously worked for the company for several months as night operator. He was engaged in removing the wires from old pole to a new one when he was injured. The pole was an old one, but it was not being moved because it was old, but because the

city wanted to build a sidewalk where it was placed. The pole appeared to be sound. Steiner climbed the old pole by means of climbing spurs, and, after reaching the top, fastened his body to the pole by means of a safety strap in order that he might have free use of his hands. The pole which he climbed was not guyed or braced in any manner except by the service wires strung on it. When he cut these wires loose for the purpose of transferring them to the new pole, the old pole broke where it entered the earth, and Steiner fell to the ground with it. He jerked his feet loose, but his body being fastened to the pole by his safety belt, he could not detach himself from it, and fell face downward with the pole. As the result of the fall his right shoulder was dislocated, his left ankle badly torn up, and both bones of his right leg just below the knee were broken. He adduced testimony tending to show that his right leg had not recovered, and that he might become permanently lame. He stated that he still suffered pain from it when he walked a great deal. The trial occurred about two years after the accident happened. Steiner also testified that the pole was rotten where it entered the earth; that he had had no previous experience as a lineman except his two weeks' service with the company, and that he had not been warned or instructed as to the dangers incident thereto.

The only assignment of error insisted upon by counsel for appellant is the action of the court in giving the following instruction:

"If defendant, by its authorized agent, ordered plaintiff into a place of danger to aid in disconnecting wires from a pole, and plaintiff by reason of youth and inexperience did not know of and appreciate the danger of the situation, and defendant knew this, or ought, in the exercise of ordinary care on its part, to have known it, then it was defendant's duty to warn him of his danger, so that, as far as might be by proper care on his part, plaintiff could perform his duty in safety to himself; if the defendant failed in this respect, and plaintiff, while exercising due care for his own safety, by such failure suffered the injuries sued for, then plaintiff should recover in this action."

The instruction in all essential respects is similar to one approved by this court in the *St. Louis Stave & Lumber Com-*

*pany* v. *Sawyer*, 90 Ark. 473; and the principles of law embodied in it are discussed and approved in the case of the *Arkansas Midland Ry. Co.* v. *Worden*, 90 Ark. 406, in which our previous decisions on the subject are cited. Hence it may be said that the only question presented for our consideration is, was there sufficient testimony upon which to base the instruction? We must answer that question in the affirmative. The evidence shows that the pole was rotten at the point where it emerged from the earth. That experienced linemen always test old poles with a crowbar or other instrument at this point before climbing them. If found unsafe, the pole is braced in some way before the lineman climbs it; for the pole is in some measure braced by the service wires attached to it, and when these are removed there is no support whatever to the pole. If it has become decayed where it comes out of the ground, the swaying motion of the lineman while engaged in his work has a tendency to cause the pole to break at this point and fall when the support of the service wires is taken away. Of these dangers Steiner says the company gave him no instructions or warning whatever, and of them he had no knowledge himself. It is true that he was well developed physically, as contended by counsel for appellant, and, so far as the record discloses, was possessed of average intelligence for a boy of his age. But he testified that, while he had worked for several months in the office as an operator, he had no experience in the work of a lineman. And on cross examination he said that, while he would naturally suppose that the work was dangerous to some extent, he did not know the dangers of rotten poles. His testimony, when considered as a whole, warranted the court in giving the instruction to the jury.

The jury returned a verdict for $3,850, and it is insisted that this was excessive. We do not think so. One of the physicians who attended Steiner testified that his injuries were extremely painful, and healed very slowly. He stated that he examined the break in the right leg three or four days before the trial, and that there was a surplus fluid in the joint that did not belong there. That a diseased condition of the limb caused the fluid. That, while he believed the fluid would disappear in time and restore the knee to its normal condition,

he could not state it as a positive fact. That it might continue to increase and cause lameness.

The judgment will be affirmed.