BUFFALO ZINC & COPPER COMPANY *v.* HALE.

## Opinion delivered October 21, 1918.

1. LANDLORD AND TENANT—CONSTRUCTION OF LEASE.—Where an instrument of lease was prepared by the lessor, any doubt as to the meaning of its terms should be resolved against the lessor.

2. SAME—IMPROVEMENTS BY LESSEE—REMOVAL.—Where a contract of lease reserved in the lessee a right to remove any buildings erected by him on the leased premises, such buildings did not become a part of the realty, but remained the lessee's personal property.

3. SAME—RIGHT TO REMOVE BUILDINGS.—Where a contract of lease, prepared by the lessor, provided that "if lessee shall have paid or caused to be paid the rent reserved by this lease, and shall have kept and performed all the covenants and agreements of this lease, lessee shall have the right, within sixty days after the expiration of this lease, to remove all buildings and improvements put upon the above-described lands by lessee," the right of removal of buildings erected by the tenant was not given upon the condition that it should be exercised only within sixty days after expiration of the lease, but such right might be exercised at any time by the lessee, if he was not in default in the payment of rent then due.

Appeal from Marion Chancery Court; *Ben F. Mc-Mahan*, Chancellor; affirmed.

*J. C. Floyd*, for appellant.

1. The buildings erected were store or business buildings and their erection enhanced the value of the lots. They were permanent structures attached to the freehold making them part of the realty fixtures, and appellee had no right to remove them. 56 Ark. 55; 19 S. W. 108; 27 Ark. 332; 63 *Id.* 625; 88 *Id.* 129; 11 R. C. L., § 24, p. 1081; 19 L. R. A. 443.

2. They were in no sense "trade fixtures." 95 Ark. 268; 16 *Id.* 511. The liberal rule between landlord and tenant should not be applied. The right to remove depends solely upon the terms and conditions in the leases. The rent must be paid and the removal made *within* 60 days after the expiration of the lease. 25 Cyc. (111) p. 1102; 39 Me. 144; 40 Mo. 121; 11 R. C. L. 1082, § 25; 54 S. W. 222; 72 Ark. 500; 52 *Id.* 251; 56 *Id.* 55; 19 L. R. A. 442. The chancellor erred in holding that appellee had

the right to remove without first performing all the covenants in the lease.

*Williams & Seawel,* for appellee.

1. The buildings were erected by permission and consent and remained personalty. 52 Ark. 251; 90 *Id.* 351. They were mere chattels. 11 R. C. L., § 26, p. 1083, and § 25, p. 1082; 12 A. & E. Ann. Cases, 1088.

2. They were mere trade fixtures and removable by the tenant during the term. 21 Ark. 85; 25 *Id.* 261; *Ib.* 625; 40 *Id.* 423.

3. As to the limitation and meaning of ''within'' see 37 N. E. 899; 40 Cyc. 2128; 54 Ala. 529. The right of removal existed ''not beyond'' 60 days after the expiration of the lease. Leases are construed most strongly in favor of the lessee. 24 Cyc. 915 (c) ; 34 Ill. App. 190; 93 Ark. 338; 77 *Id.* 305; 97 *Id.* 522, 532.

4. They were trade fixtures and removable. 19 Cyc. 1066; 11 R. C. L. 1082, § 25; 95 Ark. 275. See also 64 N. E. 701; 127 Ark. 391.

SMITH, J. The parties to this litigation entered into four separate contracts in writing. We set out the material portion of one of these. The others are identical, except different lots are described and different rentals are provided for.

''This lease, made and entered into on this 1st day of December, 1915, by and between the Buffalo Zinc & Copper Company, a corporation organized under the laws of the State of Illinois, hereinafter called lessor, and W. C. Hale, Rush, Arkansas, hereinafter called lessee, witnesseth: That lessor in consideration of the rents to be paid and the covenants and agreements hereinafter to be kept by the lessee, does hereby lease unto lessee the surface ground only to the following described land situated in the county of Marion, State of Arkansas, to-wit: Lot No. 11, in Block No. Seven, Rush, Marion County, Arkansas, according to the plat of Rush recorded in

book of town plats in the office of the Recorder of Deeds of Marion County, Arkansas. To have and enjoy the same for a term of ten years, beginning on the first day of December, 1915, and ending on the first day of December, 1925. Lessee shall pay as rent to lessor the sum of $240 for the full term of this lease and shall pay the same in advance in installments of $2 on the first day of each month. Lessee shall pay all taxes and assessments, general and special, imposed on the buildings and improvements on the above described lands and within the time required by law. Lessee shall keep the above described lands and the buildings and improvements thereon free and clear from all mechanics' liens. If lessee shall have paid or caused to be paid the rent reserved by this lease, and shall have kept and performed all the covenants and agreements of this lease, lessee shall have the right, within sixty days after the expiration of this lease to remove all buildings and improvements put upon the above-described lands by lessee. It is understood and agreed between lessor and lessee (1) that the title to and the use and enjoyment of any mines, metals, ores, minerals and mineral substances, in on and under the above described lands remain in lessor, and that lessee acquires no title thereto nor the use or enjoyment thereof under or by virtue of this lease; (2) that lessor has and reserves the right to use and enjoy, or suffer to be used and enjoyed every part of the mines, metals, ores, minerals and mineral substances in, on and under the above described land; (3) that lessor has and reserves the right to use and enjoy, or suffer to be used or enjoyed the whole or any part of the above described land for the purpose of removing or extracting metals, ores, minerals and mineral substances and for the purpose of conducting mining operations so as not to interfere with the use and enjoyment by lessee of the surface to the above described land and the buildings and improvements thereon. Failure of the lessee to pay the rent reserved within thirty days after the same shall be

due and payable or a violation by lessee of any covenant or agreement to be kept and performed by lessee shall, at the option of lessor, produce and work a forfeiture of the lease.   Notice of forfeiture shall be in writing signed by lessor or its duly authorized agent and served upon lessee either by delivering said notice to lessee or by posting said notice on said demised premises.   Upon a forfeiture as above provided, the terms of this lease shall expire and lessor may forthwith enter upon and take possession of said premises together with the buildings and improvements thereon.''

The case was heard on an agreed statement of facts, which contained the following recitals:

''It is further agreed that defendant, W. C. Hale, had not at the time of the bringing of this suit made default in the payment of any installment due on said lots or either of them under his contracts with plaintiff or otherwise made default in complying with any requirement of said lease which would work a forfeiture thereof and has not up to the present time made such default. It is further agreed that W. C. Hale, defendant, had erected frame buildings on certain of said lots and had also permitted others to erect frame buildings on certain of said lots under sub-leases which buildings were all constructed for the purpose of carrying on business or trade therein, the same being business houses.   That before the bringing of this suit defendant Hale had torn down and removed one of said structures or buildings from said premises or permitted it to be done and had declared his intention and fully intended to tear down and remove other buildings from said premises and convert the same or the proceeds derived therefrom to other uses under the avowed claim that he had a right to do so under his said contracts or leases.   It is agreed, before the commencing of this suit, P. T. Glass, agent of the plaintiff, forbade defendant to remove said buildings unless he had paid the full consideration on each lease which he had contracted to pay for the full ten year

period thereof; and it is agreed that said defendant informed the said Glass that he claimed the right to remove said buildings, if he saw fit and intended to do so without paying the full consideration mentioned therein, and that it was his intention and purpose to do so and also admitted to said Glass that he had already removed or permitted to be removed from one of said lots a small building which had been erected thereon."

A temporary restraining order had been granted, enjoining the lessee from removing any of the buildings, and there was a prayer that this order be made permanent. On the final hearing, the temporary restraining order was dissolved, and the cause dismissed for want of equity, and this appeal has been prosecuted to reverse that decree.

The leases were prepared by the lessor and were executed by the parties after filling in the appropriate recitals in the blank spaces of the printed form. Having thus prepared the terms of the contract, it becomes our duty to resolve any doubt which may otherwise exist as to the meaning of these terms against the lessor. *Clark* v. *J. R. Watkins Med. Co.*, 115 Ark. 166; *Ford* v. *Fix*, 112 Ark. 1. *Ford Hardwood Lbr. Co.* v. *Clement*, 97 Ark. 522; *Gulf Compress Co.* v. *Harrington*, 90 Ark. 256.

The buildings in question were erected under a contract by the express terms of which a right of removal was reserved. They did not, therefore, become a part of the realty, but remained the lessee's personal property. *Harmon* v. *Kline*, 52 Ark. 251; *Beauchamp* v. *Bertig*, 90 Ark. 351. The contract did not require the lessee to erect buildings on any of the lots. The lessee had the right to erect buildings or not, as he pleased, and the rent to be paid was not dependent on the lessee's action in this respect. A fixed rental was provided for in any event. These statements are not questioned.

It is argued, however, that a right of removal would not exist but for the contract, and that the provisions of the contract which gave the right of removal confers

that right in the event only that all of the rent shall have been paid for the period of ten years, and shall then be exercised only within a period of sixty days after the expiration of the ten years.

The right of removal is not given by any single clause of the contract, but exists as a matter of law when from the terms of the contract it appears that the buildings were not to become a part of the realty.

It appears from the agreed statement of facts, as well as from the lease contract itself, that the buildings were erected on the leased premises solely for the purpose of enabling the lessee to carry on a business or trade and were intended for his own use and convenience, and not for the purpose of making or increasing the value of the lots nor the value of their use. The buildings belonged to the lessee, and the contract made it his duty to see that all taxes, general or special, assessed against his buildings were paid by him, and he was charged with the duty of keeping his buildings free and clear from all mechanics' liens. The lessor reserved the absolute right only to require payment of the rent for the surface use of the land, from which it reserved the right to extract mineral ores, and the only rights acquirable through a forfeiture were possession of the buildings and improvements and termination of the surface right to the lots. And, as the right to take possession of the buildings is only given after forfeiture declared, the lessor can not take possession of the buildings so as to prevent the exercise of ownership and control of them by the lessee when no right to declare a forfeiture exists. No right is given the lessor to collect rent except as it becomes due, and the agreed statement of facts contains no showing of irreparable loss, nor that the lessee will not continue the performance of his contract with reference to the payment of the rent. We can not agree with learned counsel for appellant that the right of removal is given upon the condition that it shall be exercised only within sixty days after the expiration of the ten years. Such

an intention would probably have been evidenced by the use of the phrase "from and after the expiration of the lease," or words of similar purport, but the contract provides that the removal may be "within sixty days after the expiration of the lease." In 40 Cyc. 2127, the preposition "within" is defined as follows: "In the inner part, or side of; in the limit or compass of; inside the limits of; not going outside of; not later than; not further in length than; not exceeding in quantity; not beyond, used of place or time. The word has a variety of meanings according to the connection in which it is used. Thus it has been used in the sense of abutting on; before; at any time before; in any time not less than; in all parts of; from the date of; for the space of; at or before; during; at any time during; at the end of. In computation of time the word sometimes includes the first and last day, while in other cases they have one or both been excluded."

In the case of *Field* v. *Morris*, 95 Ark. 275, this court said: "Trade fixtures 'are articles erected or annexed to the realty by the tenant for the purpose of carrying on a trade, and are removable by him during the term, provided the removal does not affect the essential characteristics of the article removed or reduce it to mass of crude materials.' 13 Am. & Eng. Enc. L. (2 ed.), p. 642, and cases cited in note; *Van Ness* v. *Pacard,* 2 Pet. 137. 'Besides being removable on the grounds of public policy, trade fixtures are also removable because, from the nature of the tenure, they are not presumed to have been annexed with the intention of making them permanent additions to the realty.' 19 Cyc. 1065b.''

No attempt was made to show that the buildings whose removal were sought to be enjoined could not have been placed on rollers, or in some other manner, without taking them apart, have been removed from the land, nor does it appear that the buildings which were removed were reduced to a state of crude material. Upon the contrary, the agreed statement of facts recites: "Before

the bringing of this suit appellee had torn down and removed one of said structures or buildings from the premises or permitted it to be done, and had declared his intention and fully intended to tear down and remove other buildings from said premises and convert same or the proceeds derived therefrom to other uses.''

We can not say from this recital that the materials of the buildings were not capable of being re-assembled and used elsewhere. The buildings were, therefore, trade fixtures for the purposes of this contract, and a right of removal existed.

Judgment affirmed.

McCULLOCH, C. J., (dissenting). The buildings were not trade fixtures as legally defined, and were irremovable in the absence of a contract, express or implied, permitting the tenant to remove them. There is only one clause in the contract referring to giving the tenant permission to erect buildings on the land and to remove them, and that clause specifies the time within which the buildings may be removed. In other words, the clause conferring the right of removal carries its own limitations, and that right can be exercised only at the time and on the conditions prescribed in the contract. I do not think that the time for the removal of the buildings could have been any more accurately and definitely specified than it was by the language used in the contract. That language means that the right to remove must be exercised after the expiration of the lease, and within sixty days thereafter. Nothing could have been added to make it more definite in its meaning.

The conditions in the lease contract were that the lessee should pay the rent and the taxes, and those conditions could not be fully performed until the expiration of the term of the lease. Therefore, the language used with reference to the time for exercising the right of removing the buildings is entirely consistent with the other

language which specifies the conditions to be performed before the right of removing the buildings may be exercised.

I dissent, therefore, from the conclusion of the majority, and Mr. Justice HUMPHREYS also shares these views.