## PRINCE *v.* ALFORD.

### Opinion delivered April 4, 1927.

1. APPEAL AND ERROR—DIRECTED VERDICT—PRESUMPTION.—Where a verdict is directed against appellant, the Supreme Court will give the testimony and the inferences reasonably deducible therefrom the interpretation most favorable to him.

2. LANDLORD AND TENANT—CONSTRUCTION OF LEASE.—Where a lease was prepared by the landlord's attorney, any doubt as to its meaning should be resolved against the landlord.

3. LANDLORD AND TENANT—JURY QUESTION—BREACH OF LEASE.—In a suit for damages for breach of a lease, the question whether a deed from the landlord to a third person was not in fact a mere subterfuge adopted to defeat the lease *held* for the jury.

4. LANDLORD AND TENANT.—Where a landlord and his grantee collude to defeat the tenant's lease by a conveyance from the

landlord to such grantee, both are liable to the lessee for breach of the contract.

5.  Vendor and purchaser—notice of tenant's rights.—Although a lease, recorded but not acknowledged, was not constructive notice to a purchaser, it could be considered in determining whether the purchaser had actual notice of the lease before purchasing.

6.  Vendor and purchaser—possession of tenant as notice.—Possession of the premises by the tenant is notice to the purchaser of the reversion of the tenant's actual interest under the lease.

7.  Landlord and tenant—notice of tenant's rights—jury question.—In a suit by a tenant to recover damages for breach of a lease contract, the question whether one who purchased the leased premises did so with notice of the tenant's rights *held*, under the evidence, to be a question for the jury.

8.  Landlord and tenant—covenant for renewal of lease.—An unconditional covenant for renewal of a lease is a covenant real which runs with the land, and is binding upon a subsequent purchaser with notice, as a covenant to renew a lease is a part of the lease and fixes the term thereof.

9.  Landlord and tenant—breach of contract of lease—persons liable.—Where a purchaser of land took title with notice of the lease, he became liable with the lessor for a breach of the contract of lease.

10. Landlord and tenant—breach of lease—damages.—The measure of damages for breach of a contract of lease by the lessor is the difference between the actual value of the leasehold estate and the agreed rental that was to have been paid therefor.

11. Landlord and tenant—breach of lease—action.—Where a landlord extinguishes the tenant's term by a wrongful conveyance, the tenant had a cause of action against him for damages to the value of the term, based upon the wrongful destruction of the term.

Appeal from Mississippi Circuit Court, Chickasawba District; *W. W. Bandy*, Judge; reversed.

*Frank C. Douglas* and *C. L. Summers*, for appellant.
*Nelson & Crawford*, for appellee.

Smith, J.   On December 3, 1923, J. T. Alford was the owner of lot 17, in block 33, of the original survey of the city of Blytheville, at which time he entered into a lease contract for a period of two years for the lot described with D. L. Downs.   The lease began January 1, 1924, and provided that the lessee should pay a rental

of $6 per week. The lease contract contained the following provisions:

"It is further agreed that, when first party gets ready to build a new building upon said lots, he shall give second party ten days' notice thereof, and second party hereby agrees to vacate said premises at once and deliver the same to first party. It is further agreed that, if first party constructs a new house upon said lot, then second party shall have the refusal of renting the same for a period of two years from date of completion at the rental price of $50 per month, payable in advance.

"Signed in duplicate on this the 3rd of December, 1923.

"J. T. Alford, first party.
"D. L. Downs, second part.

"Lease transferred satisfactorily. When old building is torn out the rent stops until new building is completed.
"J. T. Alford to W. O. Prince."

W. O. Prince purchased the lease from Downs, with the consent of Alford, as is shown by the indorsement made on the lease itself, and the lease was assigned to him by Downs on April 19, 1924. Alford did not erect the building mentioned in the lease, but sold the lot to T. E. Reeves, who did erect a building consisting of two rooms. Reeves tendered one of these rooms to Prince at a monthly rental of $50, but Prince declined the offer, and demanded possession of both rooms, or the entire building, at that rental. This demand was refused by Reeves, who thereupon rented the rooms to separate tenants for $50 per month each. Prince then brought this suit against Alford and Reeves to recover damages for the breach of the contract, and alleged as the measure of his damages the difference between the agreed rental and the rent reserved, and judgment therefor was prayed.

Prince testified that he bought the lease with Alford's consent, and paid rent to Alford, and, after doing so, Alford stated that he had never read the lease after it had been executed until the night before the conversation between them. While it is shown that Prince paid the

rent on the lease, it is not clear whether he took actual possession and occupied the house thereon. Alford proposed that a new contract be written, but Prince declined to change the old one. Alford then asked if Prince construed the contract as giving him all of the new building which Alford contemplated erecting, and, when Prince stated that he did so construe the contract, Alford stated that he would not erect a new building. Alford then conveyed the lot to Reeves, who discussed the matter with Prince and asked Prince how much he had invested. Prince declined to answer the question, whereupon Reeves said he would erect a building with a front of ten feet. The old building on the lot was twelve feet wide by twenty-six feet long. Prince paid $650 for the lease, and told Reeves that he claimed the right of possession to the lot for the term of the lease, and Reeves answered that he (Reeves) was perfectly safe, as he did not go into anything blindly. It appears that, when the original lease was made, both parties thereto knew that the building on the lot had been condemned under an ordinance of the city and would have to be torn down and removed. After Reeves bought the lot he erected a building twenty-six feet wide and ninety feet long on the lot, and Prince demanded possession of the new buiding, and tendered $50 in payment of the first month's rent. This demand was refused. There was substantial corroboration of the testimony of Prince, in addition to the lease itself, which was offered in evidence.

Alford admitted the execution of the written lease, and that he had it prepared by his attorney. He stated, however, that it was his plan to erect two buildings, or one building with a partition wall. Did not remember telling Reeves that Prince claimed the entire lot before selling to Reeves, but admitted telling Reeves what Prince contended for before the building was erected. Alford admitted that he had an interest in the building, but did not state what that interest was.

Reeves testified that he bought the lot from Alford, who had nothing to do with the erection of the building.

He spoke to Prince about the building, for the reason that he wanted to suit Prince, and that Prince "blew up" when he mentioned the matter to him. Reeves testified that he knew nothing about the lease until after he had bought the property, although he admitted that an abstract was furnished him. He did not state whether the lease was shown on the abstract or not, although the lease was of record. The lease had never been acknowledged.

At the conclusion of the introduction of the testimony the court directed the jury to return a verdict in favor of both Alford and Reeves, and from the judgment pronounced thereon is this appeal.

Inasmuch as a verdict was directed against appellant, we must give the testimony and the inferences reasonably deducible therefrom the interpretation most favorable to him. It may also be said that, inasmuch as appellee, Alford, had the lease prepared by his attorney, any doubt as to its meaning should be resolved against him. *Buffalo Zinc & Copper Co. v. Hale,* 136 Ark. 10, 206 S. W. 661.

When the testimony is thus viewed, it may be said that there was a question for the jury, as is contended by appellant, whether the deed from Alford to Reeves was not in fact a mere subterfuge adopted to defeat the lease. The relation between Alford and Reeves and the admission by Alford, which was not explained, that he had an interest in the building, notwithstanding the fact that he had conveyed the lot on which it was erected, authorized the submission of the question whether Alford and Reeves had colluded to defeat the lease. If they did so, both would be liable for that reason.

But appellant's right to recover damages against either Alford or Reeves, or both of them, is not dependent on the affirmative finding that the deed was collusively executed. They may both be liable upon another ground which the testimony sufficiently raises for submission to the jury.

Reeves may have bought with notice of the lease, although he did not buy collusively. It has been said that the lease was not acknowledged, although it was recorded, and, even though it would not therefore be constructive notice, under § 1525, C. & M. Digest, this fact may be considered in determining whether Reeves had actual notice before purchasing the lot. Reeves admitted that he had an abstract of the title made before purchasing, and in this way he may have acquired actual knowledge of the lease. The testimony of Prince tends to show that Reeves had actual notice both from himself and from Alford of the existing lease. We have said that it is not clear whether Prince was in the actual possession of the lot when Reeves purchased. If so, this possession was notice.

At § 10 of the chapter on "Landlord and Tenant" in 16 R. C. L., 538, it is said: "It is a general rule that the possession of a tenant is notice to a purchaser of the reversion of the actual interest of the tenant * * *."

The syllabus in the case of *First National Bank of Paris* v. *Gray*, 168 Ark. 12, 268 S. W. 616, is as follows: "The possession of a tenant or lessee is not only notice as against a subsequent mortgagee of all his rights and interest connected with or or growing out of the tenancy or lease, but is also notice of all interests he may have acquired through subsequent or collateral agreements."

The question whether Reeves purchased with notice should therefore have been submitted to the jury, and, if the finding by the jury be made that Reeves purchased with notice, then he is liable if Alford is liable.

In the case of *Crane* v. *Patton*, 57 Ark. 340, 21 S. W. 466, the facts were that Paddock executed to Patton a certain writing, which the court construed to be a lease, under which Patton had the right to cut and remove certain timber. Thereafter Paddock conveyed the land to Crane, who denied Patton the right to cut and remove the timber, and Patton sued Crane for damages. Upon the trial of the case the court instructed the jury as follows: "2. If the defendant, at the time of his purchase from

Paddock, knew that plaintiff was in possession or control of the land, it was his duty to make reasonable inquiry as to what right or authority he had such possession and the extent of his rights on the land, and is chargeable with knowledge of whatever he might have learned by such inquiry." There was a verdict awarding damages to Patton, and, upon the appeal, the instruction set out was approved. The court, through Mr. Justice Hemingway, said: "The rights of the lessee are vested, not determinable at the will of the lessor; and a sale during the term of the lease, to one having notice of it, could not extinguish it."

It is true the lease did not require Alford to erect a new building, and his grantee was under no duty to do so. But the lease did convey the lot for the term of two years, and gave the right of possession for that period of time, whether a new building was erected or not, the rental to be increased if a new building were constructed.

If, because of the uncertainty whether a new building would be erected, the lease should be construed as being merely a covenant to renew the lease for the portion of the two years then unexpired at the increased rental, the rights and liabilities of the parties would not be changed, because the law is that an unconditional covenant for renewal in a lease is a covenant real which runs with the land and is as binding on a subsequent purchaser as is the lease itself. This is upon the theory that a covenant to renew a lease is a part of the lease and fixes the term thereof. Cases cited in the note to the case of *Neal v. Jefferson,* 41 L. R. A. (N. S.) 387, fully support this statement of the law.

At § 402 of the chapter on "Landlord and Tenant," in 16 R. C. L., 897, it is said: "It is the well-recognized general rule that the benefit of the lessor's covenant to renew runs with the leasehold estate and is enforceable by an assignee; and, as a corollary of this rule, after a lessee has assigned the term, he loses his right to enforce the renewal, as such right has passed to his assignee."

In the case of *Crenshaw-Gary Lumber Co.* v. *Norton,* 111 Miss. 720, 72 So. 140, L. R. A. 1916E 1227, the Supreme Court of Mississippi said: "The covenant to renew or extend the lease in the case at bar ran with the land, and could be availed of by the assignee of the lessee as a matter of law. However, this right was carried into the face of the lease. This provision could 'also be enforced against the lessor or his assigns or grantees. Therefore appellee, Norton, having notice, both actual and constructive, of the provisions of the lease, and actual notice of the intention and purpose of appellant to avail of the extension covenant therein, the same is enforceable against him." See also *Leominster Gaslight Co.* v. *Hillery,* 197 Mass. 267, 83 N. E. 870, where a syllabus reads as follows.: "Where a deed conveyed property subject to a lease of part of the premises, the grantee took the property subject to the rights of the lessee secured by the lease, including a covenant running with the land to renew the lease at the expiration of the term."

It follows therefore that, if Reeves took title to the lot with notice of the lease, he is jointly liable with Alford for any damages resulting from the breach of the contract, and the measure of such damages is the difference between the actual value of the leasehold estate that should have been enjoyed and the agreed rental that was to have been paid therefor. *Neal* v. *Jefferson, supra; Wakin* v. *Morgan,* 165 Ark. 234, 263 S. W. 783; *Reeves* v. *Romines,* 132 Ark. 599, 201 S. W. 822.

So far we have considered the joint liability of Alford and Reeves. If it be found that Reeves is not liable, because he took title to the lot without notice of the lease, the individual liability of Alford remains to be considered, and we think his liability is shown by the undisputed testimony.

In *Williams* v. *Young,* 81 Atl. 1118, it was said by the Court of Errors and Appeals of New Jersey that, where a landlord extinguishes his tenant's term by a wrongful conveyance, the tenant has an action against

him for damages to the value of the term, based upon the wrongful destruction of his term.

The lease here involved has now expired, and, upon a new trial, which must be ordered (in the absence of testimony excusing Alford's breach of the lease contract), the jury will assess damages against Alford under the measure herein announced.

The judgment of the court below will therefore be reversed, and the cause remanded for a new trial.