EXECUTORS OF PETER STEVENS *v.* HARTLEY HOLLISTER.

If the owner of land, who has been disseized, bring trespass *qu. cl. freg.*, instead of ejectment, against the disseizor, he can only recover damages for the first entry of the defendant upon the land, unless he prove a re-entry by himself before suit brought. In the latter case,— Per REDFIELD, J.,— he may recover for all the intervening damages, the same as in the action of trespass at common law for mesne profits, after a recovery in ejectment.

The doctrine of constructive possession will not be extended to land in the actual adverse possession of a disseizor.

In this case, which was trespass *qu. cl. freg.*, the plaintiff derived title from original proprietors of the town and produced a survey, on their rights, of fifty acres, embracing the *locus in quo*. The first deeds in his chain of title, subsequent to the survey, described the lot as a forty acre lot, and omitted one line of the survey, but referred to a survey on record. Subsequent deeds followed these errors in the description, and omitted the reference to the survey; but it was proved that the plaintiff and those under whom he derived title had, for more than thirty years prior to the entry of the defendant, occupied the entire fifty acres, including the *locus in quo*, claiming title thereto by virtue of the said survey bill and deeds. And it was held, that the county court were correct, in instructing the jury, that, in law, the several deeds conveyed the land described in the original survey.

When there is no controversy as to the facts in the case, it is a mere question of law, what land was intended to be conveyed by a deed.

TRESPASS *quare clausum fregit.* Plea, the general issue, with notice, and also plea of license, and trial by jury,—WILLIAMS, Ch. J., presiding.

On trial the plaintiffs gave evidence, proving, that, on the 30th day of September, 1802, one Oliver Hawks surveyed and laid out to John Stark, one of the original proprietors of the town of Pawlet, fifty acres of land, the survey bill of which was recorded in the town records of Pawlet the same day, and that Stark entered immediately into possession of the same land, under the survey, and that the survey covered the land claimed by the plaintiffs in their declaration. The plaintiffs also gave in evidence the deeds, subsequent to the survey, under which their testator claimed title, the two first of which, in the chain of title, described the lot as a forty acre lot and

omitted one line given in the survey bill, but referred to a survey on record, and the remainder of which continued the same error in the description, but omitted the reference to the survey. The plaintiffs also proved that the testator, and those under whom he claimed, had been in possession of the lot described in the survey bill from the time possession was taken by Stark until the year 1834, when the defendant entered, and cut timber, and cleared about ten acres of the land,—which was the trespass complained of in the declaration,—and had continued the trespass until the commencement of this action.

The defendant gave evidence, tending to prove that he entered into possession of the *locus in quo* in 1834, and that he had continued in exclusive possession of the same from that time to the time of commencing this suit; he also gave in evidence a survey of the lot to himself, made March 20, 1836, and put on record September 2, 1839, but gave no other evidence of title.

The defendant requested the court to instruct the jury, that, although the original survey to Stark embraced fifty acres, yet that the subsequent deeds restricted the title of the plaintiffs' testator to forty acres; but the court instructed the jury, that the subsequent deeds, in law, conveyed the same land described in the survey, although they contained no special reference to the survey. The defendant also requested the court to instruct the jury, that, if he entered upon the *locus in quo* in 1834 and had ever since continued in the exclusive possession thereof, he would be liable for nominal damages, only, for the first entry, although he showed no title to the land. But the court instructed the jury, that, the plaintiffs' testator having a title, by deed, to the land in question, if he was in the actual possession of a part of the lot described in the deed, claiming the whole, he had the constructive possession of the whole, and might recover in this action the actual damages for all the trespasses committed by the defendant, while the defendant was in the actual possession of a part of the lot.

The jury returned a verdict for the plaintiffs for the entire damages. Exceptions by defendant.

*C. B. Harrington and S. H. Hodges* for defendant.
1. The defendant insists, that the deeds, under which the plain-

tiffs' testator immediately claimed title to himself, cannot be so construed as to embrace the premises in controversy, but must be restricted, to the forty acres expressly named. If the jury might have found, as matter *in pais,* that the deeds in fact conveyed the whole lot, including those premises, still the question was within their exclusive province to determine; and the charge, that they, " in law," conveyed the land contained in the survey, was therefore erroneous. *Hodges* v. *Strong,* 10 Vt. 247.

2. The plaintiff cannot maintain trespass *quare clausum fregit,* unless he is in possession of the premises at the time the alleged trespasses are committed. *Graham* v. *Peat,* 1 East. 244. *Harker* v. *Birkbeck,* 3 Burr. 1566. *Cary* v. *Holt,* 2 Str. 1238. *Lambert* v. *Stroother,* Willes 221. *The King* v. *Watson,* 5 East. 485, 487. 1 Chit. Pl. 176. 1 Sw. Dig. 513. If he has been dispossessed, he can recover nominal damages, only, for the first act of eviction, and nothing for subsequent injuries, until he has regained the possession. It is so laid down in the books universally; 1 Chit. Pl. 200, 203; 3 Bl. Com. 210; *Lyford's Case,* 11 Co. 45; 2 Roll. Abr. 553; it is settled by the decisions in this country; *Allen* v. *Thayer,* 17 Mass. 299; *Wheeler* v. *Hotchkiss,* 10 Conn. 225; *Holmes* v. *Seely,* 19 Wend. 507; *Barr* v. *Gratz,* 4 Wheat. 213; *Ellicott* v. *Pearl,* 10 Pet. 412; *Morgan* v. *Varrick,* 8 Wend. 587; and the rule has been repeatedly recognized in our own State; *Crowell* v. *Bebee,* 10 Vt. 33; *Hubbard* v. *Austin,* 11 Vt. 129; *Ralph* v. *Bayley,* 11 Vt. 521; *Ripley* v. *Yale,* 16 Vt. 257. These cases show, at the same time, that the doctrine of constructive possession is never extended to land in the actual occupation of adverse parties. If it were, *Holmes* v. *Seeley,* at least, must have received a different decision. A constructive possession always terminates, when an actual adverse possession commences. *Ripley* v. *Yale,* 16 Vt. 257. *Crowell* v. *Bebee,* 10 Vt. 33. *Hubbard* v. *Austin,* 11 Vt. 129. *Ralph* v. *Bayley,* 11 Vt. 521.

If a third person had trespassed upon the premises, while in the possession of the defendant, he alone, and not the plaintiffs' testator, could have maintained an action for such trespass. It seems hardly consistent, to treat that possession as a trespass upon the land owner, which the law recognizes as sufficient to defeat his right of action against third persons and give it to the trespasser. *Carey* v.

*Holt,* 2 Str. 1238.  *Catteris* v. *Cowper,* 4 Taunt. 547.  *Cutts* v. *Spring,* 15 Mass. 137.  *Reed* v. *Shepley,* 6 Vt. 602.  *Ralph* v. *Bayley,* 11 Vt. 521.  *Doolittle* v. *Linsley,* 2 Aik. 155.  *Sawyer* v. *Newland,* 9 Vt. 383.  *Graham* v. *Peat,* 1 East 244.  1 Sw. Dig. 513. The plaintiff's intestate was so far disseized, that in fifteen years he would have lost his title.  His true remedy, then, is ejectment; which he could have maintained, beyond any question, upon this eviction.  Ejectment will not lie for mere trespasses ; and it seems equally inconsistent, to treat a manifest eviction as merely a trespass.

*G. W. Harmon* for plaintiff.

1. The true rule applicable to the action of trespass may be found in 5 Bac. Abr. 166, §§ 43, 44 ; and the question is, whether the facts, as detailed in the bill of exceptions, disclose a case within that rule.  The plaintiffs' testator having had the actual possession of the entire close, described in the declaration, for a long period of time, and the defendant having entered from time to time upon a portion thereof and committed the acts complained of, the possession of the former is to be regarded as continuing through the whole time, during which the latter was committing those acts ; and whatever acts the defendant committed must be regarded as trespasses, and not as amounting to a disseisin,—the plaintiffs' testator having title, and the defendant having none.  4 Kent 120, 482, 487.  Bal. on Lim. 362, 363.  *Blood* v. *Wood,* 1 Metc. 528.  *Beach* v. *Sutton,* 5 Vt. 209.  *Hull* v. *Fuller,* 7 Vt. 100.  *Crowell* v. *Bebee,* 10 Vt. 33.  *Hubbard* v. *Austin,* 11 Vt. 129.  It must follow, then, that the plaintiff can recover, not only for the *first* trespass, but for all subsequent acts of the defendant in clearing the land.

2. The original survey of the lot embraced fifty acres in fact, but was immediately called " forty acres; " it was twice conveyed as " forty acres," and the quantity made certain by a reference to the survey ; after that it was conveyed as " forty acres," without any reference to the survey, but the description was in the same words as in the first deeds.  *Melvin* v. *Proprietors,* 5 Met. 15. *Beach* v. *Stearns,* 1 Aik. 325.  *Hull* v. *Fuller,* 7 Vt. 100.  *Hathaway* v. *Power,* 6 Hill 453.  *Hibbard* v. *Hurlburt,* 10 Vt. 173.  *Burton* v. *Lazell,* 16 Vt. 158.

38

The opinion of the court was delivered by

REDFIELD, J. The general rule of law, in regard to the right of the disseizee to maintain trespass *quare clausum fregit* against the disseizor, seems to be well enough settled; and the counsel for the plaintiff has not attempted to *unsettle* it. It is thus laid down by Blackstone, [3 Bl. Com. 210 ;] "Though a disseizee might have it [the action of trespass *qu. cl. freg.*] against the disseizor for the injury done by the disseizin itself, at which time the plaintiff was seized of the land, but he cannot have it for any act done after the disseizin, *until* he gained possession by re-entry, and then he may maintain it for the intermediate damage done; for after his re-entry the law, by a kind of *just post liminii*, supposes the freehold to have all along continued in him." The rule is laid down in nearly the same terms in 4 Kent 119, and in 5 Bac. Ab. 166. Lord Coke, in his commentary upon Littleton, 257 *a*, says, "The disseizee shall have an action of trespass against the disseizor, and recover his damages *for the first entry*, without any regress; but after regress he may have an action of trespass with a *continuando*, and recover as well for all the mesne occupation as for the first entry." And the text of Littleton, Sect. 430, 256 *b*, is to the same effect.

The only question, then, in the present case seems to be, whether there was any disseizin of the plaintiff. For if there were, it is not claimed, that he made any re-entry upon the premises before bringing the action, and it would therefore be error in the court below to suffer him to recover the intermediate damages between the disseizin and the bringing the action.

There is considerable discussion in the books, how far certain equivocal acts of tenants, and of others in subordinate relations to the owner of the land, may by him be treated, at his election, as a disseizin. This is a concession made to the owner for the sake of the remedy, and to answer the purposes of justice. This part of the subject will be found very elaborately and very learnedly discussed in *Taylor d. Atkins* v. *Horde,* 1 Burr. 60, and in 2 Smith's Leading Cases (Am. Ed.) 324, and notes.

In the present case the defendant gave evidence tending to show that he was in *actual exclusive occupation of the land,* upon which the trespasses were claimed to have been committed, from the year 1834 until the bringing of this suit. And upon this point the court

charged the jury, that, if the plaintiff was first in possession of some portion of the land, claiming the whole and having a deed of the whole, he might recover of the defendant for every successive act upon the land, notwithstanding he (defendant) had cleared and actually occupied some portion of the land for a great number of years. We do not see how a clearer, more unequivocal ouster, eviction and disseizin could be described. No one will doubt, I apprehend, that such an actual occupancy of the land from year to year, if continued for the term of fifteen years, would give the possessor a perfect title, which would be absurd, if there had been no actual disseizin committed upon the plaintiff. The occupancy could not give a title by the statute of limitations, unless it was such an unequivocal disseizin, as the owner was not at liberty to elect to treat as subsidiary to his own possession. The case is manifestly one of a positive, actual and notorious disseizin, and the plaintiff was entitled to recover only for the first disseizin, as a trespass, until he had made a re-entry upon the land. It is upon this latter ground, that the recovery was had in *Butcher* v. *Butcher*, 14 E. C. L. 59.

The only remaining point in this case is in regard to the construction of deeds in the chain of the plaintiff's title. Such cases are ordinarily of no practical importance to be minutely reported, for every case depends mainly upon its own peculiar circumstances and can only be a precedent for another case precisely identical in all its facts, which never occurs.

In this case it is obvious, that all the deeds were intended to convey the same land, as all use the same terms of description,—which is, indeed, defective by omitting one line; but the earlier deeds referring to the survey of John Stark, which includes the whole fifty acres and does not seem to have been divided, it would, perhaps, be a more natural construction of the deeds, that all the land included in the survey was intended to be conveyed, although it is called "forty acres" instead of fifty,—which is, indeed, the only thing raising a doubt as to the intention of the parties. We do not well see how the deeds could receive any other construction, unless they were held void for uncertainty,—which a court will always feel reluctant to do after so long an acquiescence in the validity of the deeds and occupancy under them, as there seems to have been in the present case.

We do not perceive any error in the court below in giving a construction to the deeds, as to the extent of land conveyed, without referring the matter to the jury. There was no controversy in regard to the facts in the case. The matter was, then, a mere question of law as to what land was intended to be conveyed, the same as the construction of a written instrument in any other respect. The trial appears to have been in all respects legal and proper, unless the decision of the court below might have induced the plaintiff to omit giving evidence of a re-entry upon the land. If that is so, the case will be remanded; otherwise the judgment will be reversed as to all the damages except one cent, and affirmed as to that.

The plaintiff elected to have judgment affirmed for nominal damages, and the entry was accordingly so made.

WILLIAMS, Ch. J., dissenting. In relation to the last question, which has been made on the part of the defendant, I have only to remark, that the question as to the construction of the deeds was presented as a question of law by the counsel for the defendant, they supposing at that time, and very correctly, too, that, when the facts are all before the court, the construction of a deed is properly a question to the court and not for the jury. It is surely not to be expected, that the court should avoid all responsibility in trials, and transfer to a jury the decision of every question, which may arise. Such a course might relieve the court of both responsibility and labor and give counsel a greater field to occupy in their argument to the jury; but I cannot think that a court would be justified in so doing. We are all agreed, that the construction given to the deeds was right; and I make these remarks only because it has become somewhat customary to complain of every decision of the court, as intruding on the province of the jury, and to claim that all questions, whether of law or fact, should be decided by the jury.

On the principal question, which has been made in this case, I cannot yield to the views, which are entertained by the majority of the court. The plaintiff was the owner of the land, and had an undisturbed possession for a great number of years. The defendant was without title, or claim to title, a mere intruder, and liable for all the damages, which the plaintiff has sustained; and, upon a mere

technical point, the plaintiff is permitted in this action only to recover nominal damages for the first entry, and is to take some measures to make a re-entry and then bring another action for the residue of the injury, which he has sustained. If the law is so, the defendant is surely entitled to the benefit of it, though the reason why it is so may not be so obvious. But without a full conviction that it is so, I cannot yield my assent to it.

The doctrine of the common law is, that a right of property and a mere right of entry are not sufficient to enable a party to maintain trespass for an injury to real property ; but the party must have had actual possession of the land at the time of the trespass ; that when a person is disseized, he can only have an action for the disseizin. Whether he can have any action for an injury to the land while he is disseized, and after he has re-entered, may be considered as unsettled. According to *Lifford's Case*, 11 Co. 51, he may ; but later authorities controvert this. Mr. Hammond considers it unsettled. Ham. N. P. 193. If he has any remedy, it is only against the disseizor, and not against a stranger, who may have been compelled to satisfy the disseizor. These principles I have always recognized in jury trials ; although I think we have not strictly followed the rule of the common law, but have permitted a recovery by the owner of the soil, without requiring proof of actual possession, when there is no adverse possession. I think, however, that the rule adopted in Connecticut is much the best and safest, which is, to permit the owner of the soil, who has a right to the possession and could bring an action to recover it, to maintain either trespass, or ejectment, at his election,—as it is not always very readily determined, whether a person on land, of which he is not the owner, is in possession, or a mere intruder. On the principles of the common law, however, it appears to me, that the plaintiff was entitled to recover in this action for all the damage he had sustained by the defendant's entering and cutting the timber, &c.

It is found, that the plaintiff was the owner of the land, and that it was part of his farm. It is also found, that he was in the actual occupation of a part of his farm, claiming the whole, which includes the *locus in quo.* It is farther found, that the defendant had no title, that he claimed no title, that he did not enter upon the land under any claim of title, and that he had no deed, or survey, on record,—

as the survey which purported to be made, if it ever was made, of which there is no other proof than the paper survey, was not recorded until after the suit was commenced. He had nothing to show the extent of his possession, nor was it marked out by visible fences, lines, or abuttals. As he made no claim of title,—to which we have usually attached some importance, as characterizing acts of trespass or acts of possession, and which, in my view, is the best criterion to distinguish between what shall be deemed a trespass, or a possession, —I cannot regard the plaintiff as disseized by the defendant; and I think that the defendant was rightly considered as a trespasser on the close of the plaintiff and liable for all the injury the plaintiff sustained. *McGrady* v. *Miller*, 14 Vt. 128.

Indeed, unless we adopt this criterion, it will be difficult to determine when he ceased to be a mere trespasser, and when he became a disseizor. He entered upon the land about four or five years before the action was instituted. How much he may have cut the first year, or how much the second, is not stated; but in all it amounted to about ten acres. Now without anything to designate the extent of his claim, how far he intended to claim, how much he intended to cut, it appears to me, that it would have been attended with some difficulty to say when the plaintiff was dispossessed, or of what he was dispossessed,—particularly as the plaintiff was all the while in the actual occupancy of his whole farm, and the defendant had done nothing to dispossess him, except by continually trespassing for the period of four years.

It is true, that the defendant contended that he was in the exclusive possession; but, for the reasons already given, I apprehend he was not to be so considered, as the plaintiff also claimed to have the possession, and there had been no expulsion of the plaintiff from his farm, and nothing done by the defendant to reduce the interest of the lawful owner to a mere right of entry,—which, I apprehend, is necessary, in order to preclude the owner from recovering in an action of trespass. In New York, in order to make out an adverse possession the defendant must show a substantial inclosure, and an actual occupancy, defined, positive and notorious; it is not enough to make what is called a possession fence. *Jackson* v. *Schoonmaker*, 2 Johns. 230. To the same effect are the cases in Massachusetts; *Bates* v. *Norcross*, 14 Pick. 224; *Coburn* v. *Hollis*, 3 Met. 125.

In Pennsylvania it is considered, that cutting trees on an uninclosed wood lot would constitute but a series of trespasses and never constitute adverse possession; 9 Watts. 172; 10 Ib. 141; though it might be otherwise in that state, if Boundaries were marked out and a survey made. The language of our own courts has been to the same effect, that there must be some claim of right, or title, some marking out of boundaries, or having a survey, or deed, *on record*, to show the extent of the claim. The language of SKINNER, Ch. J., in *Doolittle* v. *Linsley*, 2 Aik. 159, is very explicit. He says, " If there is nothing more than cutting and taking timber and wood from year to year and time to time, although it should be continued fifteen years, we cannot say, that this would give a title," &c. Under a claim of title, it appeared from that case, it would be different.

There is another principle in relation to possession, which, it appears to me, clearly entitles the plaintiff to maintain this action. It is not necessary, that he should have an exclusive possession. An entry on land and regaining the possession does not suppose that the owner enters on every part. The wrong doer may still continue on the land, trespassing as before, and is liable to the owner.

Again, when there is an entry without expulsion, the law adjudges him in possession, who has the right. 1 Salk. 246. The case of *Butcher* v. *Butcher*, 7 B. & C. 399, [14 E. C. L. 59,] where this subject of possession in order to maintain an action of trespass was under consideration, is, in my view, a decisive authority in favor of the plaintiff. It was decided, that a party *having a legal title* to land, and who had not been in continued possession, but merely entered on the land and began to plough the same, might maintain trespass against a person wrongfully in possession at the time of the entry and continuing in such possession afterwards, and for the very acts of cutting grass which he did while he thus continued in possession. The authority of this case and this principle was recognized in *Newton* v. *Harland*, 1 Man. & Gr. 646; [39 E. C. L. 589,] in which it was said, that, if a lessor enters upon land and takes possession, he may treat as trespassers all, who, having unlawfully taken possession, wrongfully continue upon the land.

The inference, which I draw from this authority, is this,—that the owner of the soil, or tenant of land, in possession of any partic-

ular part of a farm, or tract of land, marked and known by visible boundaries, may maintain trespass against an intruder, who, without any color of right, or claim of title, to any piece of land marked by visible boundaries, or inclosed, or surveyed, cuts down the timber, or wood, notwithstanding he may have continued to intrude and commit trespasses for a series of years.

The authority of the case of *Butcher* v. *Butcher* is attempted to be obviated, by saying that the entry of the plaintiff, in that case, was equivalent to recovering the possession. But this, in my mind, does not establish any distinction. The plaintiff, in the case under consideration, is certainly in no worse situation, when he has continued on and occupied his farm during the whole time the defendant was trespassing, than if he had been ousted from his entire farm and had re-entered only for the purpose of making a claim. In the latter case it is conceded, that he could have maintained this action. In my view it would have been a very useless ceremony, not required by the law, for him to have walked on to the place where the defendant had been clearing, in order to entitle him to recover for the whole injury he had sustained. I think the judgment should be affirmed.