DROWN MOTOR CAR COMPANY, INC. *v.* CHARLES TOBIAS.

February Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, WILLCOX, and THOMPSON, JJ.

Opinion filed May 7, 1930.

*H. C. Shurtleff* for the defendant.

*Deane C. Davis* and *Erwin M. Harvey* for the plaintiff.

MOULTON, J. This is an action of *trespass quare clausum fregit*. The premises in question are "the first floor and basement of the front barn owned by the Montpelier Tavern, Inc., and located on Taylor Street in said Montpelier together with the first floor of the adjoining barn in the rear thereof and heretofore known and used as a livery stable, together with the addition erected in connection therewith for community purposes, and with all the privileges and appurtenances thereto belonging including necessarly rights of way to go to and from said premises at all times." Trial was had by jury. At the close of all the evidence each party moved for a directed verdict. The motion of the defendant was overruled, and that of the plaintiff was granted and the verdict directed. The defendant excepted.

The material undisputed facts are these: On December 9, 1926, the Montpelier Tavern, Inc., the owners in fee of the premises, leased them, by written lease, to the defendant for a term of two years. The lease provided for an option of renewal for a further term of three years on condition that the lessor "does not want and need the said described property for hotel purposes." On the same day the defendant, by written assignment attached to the lease, transferred, assigned, and conveyed to the plaintiff "all the rights and privileges given to me by the within lease." On the margin of the assignment it was stated that it was agreed that "Mr. Tobias is to have space in rear of front barn for purpose of storing cabs; also to have office room in front barn, if desired." This arrangement, being found to be inconvenient in practice, was later modified verbally so that the defendant had storage space in the adjoining, or, as it will hereafter be called, the rear barn, and office room in a small addition thereafter erected by the plaintiff. The defendant was a taxi driver; the plaintiff's business was the sale of automobiles and accessories.

The plaintiff entered into possession of the premises and remodelled the front barn for use as a show room for the automobiles which it had for sale. A small door opening into Taylor Street furnished access for such persons as desired to enter, but the only way in which automobiles could be brought into the show room was through the rear barn, and a large door opening into the show room from the rear barn.

On September 12, 1928, by registered mail, the plaintiff notified the Montpelier Tavern, Inc., that it wished to exercise the option of renewal contained in the lease. On November 27 the Montpelier Tavern, Inc. wrote to the plaintiff as follows: ''As assignee under an agreement of lease between the undersigned and Charles Tobias, of Montpelier, dated December 9, 1926, you are hereby notified in accordance with the provisions of such agreement that it will be necessary for the undersigned to use the premises covered by such agreement, for hotel purposes and therefore such agreement cannot be extended or any renewal thereof made.'' A communication to the same effect was sent to the defendant upon the same day.

The plaintiff remained in possession and on February 28, 1929, a new lease was executed between it and the Montpelier Tavern, Inc. covering the same premises, for the term of three years, but with the provision that if the premises were needed or desired for hotel purposes the lease might be terminated on ninety days' notice in writing.

On March 1, 1929, the plaintiff, through its attorney, gave notice to the defendant to vacate the premises. This the defendant declined to do. The plaintiff removed his cabs from the building and refused to pay for fuel to heat the office. The defendant replaced the cabs and boarded up the door between the show room and the rear barn, and the outer door of the rear barn so that neither door could be opened, and placed a Cadillac automobile against the outer door with the brakes set and the doors locked so that it could not be moved. It was thus rendered impossible to move an automobile in or out of the show room. These acts of the defendant constitute the trespass of which the plaintiff complains. This suit was brought while the doors were so obstructed.

■ ■ The defendant seeks to justify his action in obstructing the passage through the rear door by saying that it was necessary for him to do so to protect his property and to

prevent it from being set out of doors. He thus proceeds upon the theory that he was in lawful possession of the storage space after the execution of the lease from the Montpelier Tavern, Inc. to the plaintiff, of February 28, 1929, and that the notice to vacate did not terminate his right. He argues that the option to renew the lease of December 9, 1926, could be defeated only by the contingency that the premises were needed or desired for hotel purposes, and that this contingency had not in fact arisen, although, in the communication declining to renew the lease, the Montpelier Tavern, Inc. asserted otherwise.

But the trouble is that by the assignment to the plaintiff of all the rights and privileges given him by the lease the defendant had parted with the right and privilege of exercising the option of renewal. So far as he was concerned it did not matter whether or not the contingency had taken place, or, indeed, whether or not, in saying that it had, the Montpelier Tavern, Inc. acted in good faith.

This was a matter which concerned the plaintiff only, and if it acquiesced in the refusal to renew the lease and did not insist upon the right to exercise the option, this was nothing of which the defendant could complain. The latter's right to occupy the storage space and office under the agreement contained in the assignment terminated with the expiration of the lease of December 9, 1926, and would not be revived under a new and subsequent lease in the absence of an agreement to that effect, of which there is no evidence.

It is unnecessary to decide whether the lease of December 9, 1926, is to be construed as containing a covenant for its renewal, or one for an extension of the term, the distinction between which is pointed out in *Quinn* v. *Valiquette,* 80 Vt. 434, 442-445, 68 Atl. 515, 14 L. R. A. (N. S.) 962. The lease of February 28, 1929, was in no sense either an extension or a renewal of the former lease, which had expired according to its terms more than two months before. The new lease differed from the former one in the provision for its termination upon ninety days' notice. It created an entirely new estate in which the defendant had no interest whatever. After its execution the plaintiff was the only party interested in the leasehold estate. The notice to vacate, therefore, made it the duty of the defendant to quit the premises.

■ ■ The defendant insists that the plaintiff has mistaken its remedy, and that ejectment and not trespass is the proper form of action, because there has been a disseisin, and no re-entry before suit was brought. But our rule is that of the common law, although based, as it may be, "on artificial and subtle fiction," that trespass *qu. cl. fr.* will lie for a disseisin, and recovery may be had for the first wrongful act although it is only where the plaintiff re-enters before suit is brought that all intervening damages may be recovered. *Muir* v. *Bissett*, 52 Vt. 287, 291; *Clark* v. *Dustin*, 52 Vt. 568, 570; *Cutting* v. *Cox*, 19 Vt. 517, 521; *Executors of Stevens* v. *Hollister*, 18 Vt. 294, 298, 46 A. D. 154. The defendant contends that his original entry upon the premises was lawful, but even so, his entry was only upon such part thereof as he had the right to occupy and his occupancy of the rear barn was at no time exclusive. The plaintiff at all times had the right to, and the possession of, so much of it, at least, as was necessary for the free and unobstructed passage through it to and from the show room. Any disturbance of that possession was a trespass, sufficient to support this action. *Humphrey* v. *Twin State Gas, etc., Co.*, 100 Vt. 414, 418, 139 Atl. 440, 56 A. L. R. 1011; *Oatman et al.* v. *Fowler*, 43 Vt. 462, 464; *Ripley* v. *Yale*, 16 Vt. 257, 258. That the acts of the defendant were a disturbance of the plaintiff's possession is too clear to require further comment. There was no error in the refusal to direct a verdict for the defendant, or in the direction of a verdict for the plaintiff.

In disposing of the foregoing exceptions, we have proceeded upon the assumption upon which the defendant's argument is based, that if the defendant, after the notice to vacate, had the right to occupy the rear barn for storage purposes, he was, under the circumstances, justified in boarding up the doors. Since we hold that he had no such right, it is not necessary to consider the question whether, even if he were entitled to such occupancy, he could, under the situation disclosed by the evidence, lawfully deprive the plaintiff of the means of access to the show room afforded by the passage through the rear barn.

Several exceptions to rulings of the trial court in the admission and exclusion of evidence have been briefed by the defendant, but in view of the disposition of this case it is un-

462

necessary to consider them further than to say that none of them present questions involving prejudicial error.

*Judgment affirmed.*