Donald L. Bevelheimer *et al.*, Plaintiffs-Appellees, *v.* Will E. Gierach, Defendant-Appellant.

(No. 58720;

First District (3rd Division)—October 2, 1975.

Tom L. Yates and Delbert T. Been, both of Chicago, for appellant.

Hugh M. Matchett, of Chicago, for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Plaintiffs, Oak Lawn Freezer Meats, Inc. (hereinafter sometimes referred to as OLFM), a corporation, and Donald Bevelheimer, president and sole shareholder of said corporation, sued defendant, Will Gierach, an attorney, for damages caused them by defendant's alleged failure to renew a lease. A jury rendered verdicts of $20,000 in favor of Donald Bevelheimer and $10,000 in favor of OLFM and the trial court entered judgment on these verdicts. Defendant then filed a post-trial motion asking for judgment notwithstanding the verdict or in the alternative for a new trial. The trial court ordered that said motion be denied, and finding the jury verdict of $20,000 in favor of Donald Bevelheimer excessive, further ordered a remittitur of $7,500, thus reducing that verdict to $12,500. Defendant now appeals.

Defendant makes the following contentions on appeal: (1) that Bevelheimer was not a proper party plaintiff; (2) that the trial court erred in not ordering a directed verdict in favor of defendant because plaintiffs in another action had terminated the lease by agreement; (3) that the trial court erred in refusing to permit evidence by defendant as to how the renewal of lease options were handled in his practice; and (4) that the trial court erred in refusing to give the jury an instruction concerning breach of contract.

We reverse and remand.

On August 5, 1964, Donald Bevelheimer entered into a written lease with the lessor, Alfred Chiappetti, leasing certain premises located at 4828 West 95th Street in Oak Lawn, Illinois, for a period of three years. This lease contained a provision giving Bevelheimer the right to assign the lease to a corporation to be organized by him and another provision giving Bevelheimer an option to renew the lease for an additional period of three years on three months' notice. Subsequently, Bevelheimer organized Oak Lawn Freezer Meats, Inc., an Illinois corporation, and assigned the lease to said corporation which proceeded to occupy the leased premises. Bevelheimer was president and sole shareholder of OLFM except for the qualifying shares.

Bevelheimer first became acquainted with defendant Will Gierach in August of 1964 after contacting Gierach to seek advice on the above lease entered into with Chiappetti. After Oak Lawn Freezer Meats, Inc., was organized, Gierach was retained as attorney for both Bevelheimer and Oak Lawn Freezer Meats, Inc., for certain matters. Gierach was also the registered agent of the corporation, Oak Lawn Freezer Meats, Inc.

At trial, Bevelheimer testified that he had a conference with Gierach on May 10, 1967, to discuss setting up another corporation to engage in the box lunch business. At this conference Bevelheimer also mentioned to Gierach that it was time to renew the lease of the premises at 4828 West 95th Street. According to Bevelheimer's testimony, Bevelheimer asked Gierach to renew the lease and Gierach replied that he would have his secretary handle the matter. Thomas Riley, an employee of OLFM, substantiated Bevelheimer's testimony in this regard. Riley testified that he was present at the above conference, that the subject of the renewal of the lease arose, and that Gierach said he would have his secretary handle the matter.

Gierach testified that to his knowledge he had no conversation with Bevelheimer in early May concerning the renewal of the lease and that the first concrete knowledge he had that Bevelheimer wanted to renew the lease was on June 8, 1967, when Bevelheimer came into his office with a letter from Chiappetti's attorneys telling Bevelheimer to vacate the leased premises.

Gierach then advised Bevelheimer to begin a declaratory judgment action against Chiappetti asking the court to declare that OLFM had a valid lease for a term commencing on September 1, 1967, and ending August 31, 1970. The declaratory judgment action was filed in the circuit court of Cook County with Gierach representing OLFM in said action. In the complaint for declaratory judgment Bevelheimer alleged that he had numerous conversations with Chiappetti in which Bevelheimer had informed Chiappetti of their election to exercise the option to renew the lease. At the advice of Gierach, the declaratory judgment action was dismissed by way of stipulation with OLFM being allowed to maintain possession of the premises until January 15, 1968. Subsequent to the dismissal of the declaratory judgment action, plaintiffs initiated the instant suit against Gierach.

In the instant case, both Bevelheimer and the corporation sued defendant for his alleged failure to keep his promise to renew the lease and each asked for distinct elements of damages. The corporation sued essentially for loss of profits and Bevelheimer sued for loss of wages of approximately $8,000 a year that the corporation was paying him. The jury was instructed to render two verdicts if it found defendant liable. Finding

defendant liable, the jury rendered a verdict of $20,000 in favor of Bevelheimer (later reduced by the trial court to $12,500) and $10,000 in favor of the corporation.

■■ Defendant first contends that Bevelheimer was not a proper party plaintiff in this case. Plaintiffs counter argue that Bevelheimer and OLFM should be treated as one person and further contend that Bevelheimer had not forfeited any of his rights nor was he released from any of his liabilities under the lease at the time defendant broke his promise to renew the lease. Plaintiffs then cite the following headnote in Illinois Law and Practice:

> "While the privity of estate which exists between a lessor and lessee is terminated by an assignment of the lease by the lessee, ordinarily the lessee cannot relieve himself of his contractual liability merely by assigning the lease." (24 Ill. L. & Pr. *Landlord and Tenant* § 87 (1956).)

While we agree with the above statement of law, a necessary corollary thereto is that a lessee for a term for years who assigns his lease parts with all his rights thereunder. (*Byrd v. Peterson* (1947), 66 Ariz. 253, 186 P.2d 955; *Flynn v. Mikelian* (1962), 208 Cal.App.2d 305, 25 Cal. Rptr. 138; *Gale Industries, Inc. v. Bristol Farmers Market & Auction Co.* (1968), 431 Pa. 464, 246 A.2d 391.) As assignor, Bevelheimer lost his right to enforce the renewal, since such right passed to the assignee corporation, Oak Lawn Freezer Meats, Inc. (*Prince v. Alford* (1927), 173 Ark. 633, 293 S.W. 36; *Drown Motor Car Co. v. Tobias* (1930), 102 Vt. 457, 150 A. 136.) The option to renew the lease, however, runs with the land and is enforceable by the assignee, OLFM. *Sutherland v. Goodnow* (1884), 108 Ill. 528; *Kaybill Corp., v. Cherne* (1974), 24 Ill.App.3d 309, 320 N.E.2d 598; *Loudave Estates, Inc. v. Cross Roads Improvement Co.* (1961), 28 Misc. 2d 54, 214 N.Y.S. 2d 72.

■■ Plaintiffs, however, argue that Bevelheimer and the corporation should be treated as one person. We disagree. A corporation is an entity separate from its shareholders and one who seeks to have the court apply an exception must seek that relief in his pleading and carry the burden of proving actual identity. (*Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.* (1963), 45 Ill.App.2d 192, 195 N.E.2d 287.) In the instant case, plaintiff has not asked for such relief in his pleading nor has he attempted to prove facts sufficient to establish actual identity. Moreover, even if all the stock of a corporation is owned by one person, the corporation is an entity different from that of the stockholder. (*Oppenheim & Strauss v. Mower* (1915), 193 Ill.App. 48 (abstract opinion).) The general rule that a corporation and its stockholders are deemed separate entities is subject to the qualification that the separate identity

may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights. (*Ohio Tank Car Co. v. Keith Ry. Equipment Co.* (7th Cir. 1945), 148 F.2d 4, *cert. denied* (1945), 326 U.S. 730.) In order to treat plaintiffs, Bevelheimer and OLFM, as one person in the instant case the ends of justice must require us to do so and there must be some element of unfairness involved. As stated in *American Trading & Production Corp. v. Fischbach & Moore, Inc.* (N.D. Ill. 1970), 311 F.Supp. 412, 416:

"For it has long been the law that the corporate entity is only ignored when the ends of justice require it. *Taylor v. Standard Gas & Electric Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939); *Anderson v. Abbott*, 321 U.S. 349, 362, 64 S.Ct. 531, 88 L.Ed. 793 (1944). Some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction. *Fisser v. Int'l Bank*, 282 F.2d 231 (2d Cir. 1960); *Shamrock Oil & Gas Co. v. Ethridge*, 159 F.Supp. 693 (D. Colo. 1958)."

Furthermore, it is the general rule that one who has created a corporate entity will not be permitted to disregard it to gain an advantage which under it would be lost. *Earp v. Schmitz* (1948) 334 Ill.App. 382, 79 N.E. 2d 637.

■■ Under the facts of the instant case, where no unfairness is involved and where it is the sole shareholder who created the corporate entity that is urging us to treat himself and the corporation as one entity, we are not persuaded that it would serve the ends of justice to treat Bevelheimer and OLFM as one entity.

Because Bevelheimer and the corporation are two distinct entities and because the right to exercise the option was that of the assignee corporation, any promise Gierach might have made to Bevelheimer concerning the renewal of the lease was made to Bevelheimer as agent of the corporation and not to Bevelheimer personally. Any duty Gierach owed was to the corporation and not to Bevelheimer personally. Apart from his status as a shareholder, Bevelheimer stands in a position no different from that of any other employee of OLFM suing Gierach for lost wages due to Gierach's alleged failure to renew the lease. Certainly, such employees would have no cause of action against Gierach. See *Illinois Central R.R. Co. v. Baker* (Ky. 1913), 159 S.W. 1169.

■■ Furthermore, Bevelheimer as a shareholder has no cause of action for lost wages under the facts of the instant case. It is a well-established general rule that an action to enforce corporate rights or to redress injuries to a corporation cannot be maintained by a shareholder in his or her own name. Such an action must be brought in the name of the

corporation. (*Goldberg v. Ball* (1940), 305 Ill.App. 273, 27 N.E.2d 575.) This is true even where the shareholder is the sole stockholder in the corporation. (*Brodsky v. Frank* (1930) 342 Ill. 110, 173 N.E. 775.) There is an exception to this general rule when the stockholder shows that the specific wrong complained of is not only a wrong against the corporation but also a violation of a duty owing to the stockholder personally. (*Schaffer v. Universal Rundle Corp.* (5th Cir. 1968), 397 F.2d 893; *Cullum v. General Motors Acceptance Corp.* (Tex. Civ. App. 1938), 115 S.W.2d 1196; *Allied Chemical Corp. v. Randall* (7th Cir. 1963), 321 F.2d 320.) For the reasons previously stated, Gierach's alleged failure to renew the lease was not a breach of any duty owing to Bevelheimer personally and consequently Bevelheimer's status as a shareholder would afford him no right to sue Gierach for lost wages. For the reasons above stated the judgment in favor of Bevelheimer must be reversed.

■■ As to the $10,000 judgment in favor of Oak Lawn Freezer Meats, Inc., we conclude that it is also necessary to reverse that judgment and remand the cause for a new trial. Supreme Court Rule 366 provides in pertinent part that "[i]n all appeals the reviewing court may, in its discretion, and on such terms as it deems just * * * give any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the issuance of execution, that the case may require." (Ill. Rev. Stat. 1973, ch. 110A, par. 366(a)(5).) A new trial should be granted where justice so requires. (*Tankersley v. Peabody Coal Co.* (1964), 31 Ill.2d 496, 202 N.E.2d 498.) In the instant case, the interests of Bevelheimer and those of the corporation were for the most part treated as one. Generally, the instructions to the jury when referring to both plaintiffs used the word plaintiff in the singular. The jury further heard evidence of damages sustained by Bevelheimer of over $8,000 per year for loss of wages. However, Bevelheimer was not a proper party plaintiff and should not have been involved in this law suit. Under these circumstances, the interests of justice require us to reverse the judgment in favor of Oak Lawn Freezer Meats, Inc. and remand that cause for a new trial. See *Schaffer v. Universal Rundle Corp.* (5th Cir. 1968), 397 F.2d 893.

Having reversed the judgments in favor of both Bevelheimer and OLFM and having remanded the cause as to OLFM for a new trial, we will now address ourselves to defendant's remaining contentions.

■■ Defendant contends that the trial court erred in refusing to give the jury an instruction submitted by defendant concerning breach of contract. We find no merit to this contention because the jury was ad-

equately instructed on the above principle in another of defendant's instructions which defined the elements that plaintiffs had to prove in order to recover. Under such circumstances, the trial court's refusal to give defendant's instruction concerning breach of contract was harmless. *Luker v. Contract Steel Carriers, Inc.* (1968), 103 Ill.App.2d 296, 243 N.E.2d 6.

■■ Defendant next contends that the court erred in refusing to permit him to submit evidence as to how renewal of lease options were handled in his practice. We find no merit to this contention. A court will not consider evidence that a person has, or has not, done a certain act at a particular time as probative of a contention that he has, or has not, done a similar act at another time. (*Stephens v. Collison* (1928), 330 Ill. 48, 161 N.E. 68; *Lamb v. Fidelity & Deposit Co.* (1930), 257 Ill.App. 262.) It is improper to prove specific dealings with one person by testimony concerning specific dealings with another. (*Estate of Naumann v. Vanderwerff* (1971), 1 Ill.App.3d 419, 274 N.E.2d 147.) The trial court did not err in refusing to permit plaintiff to submit evidence as to how the renewal of lease options were handled in his practice.

■■ Defendant further contends that the trial court should have directed a verdict against plaintiffs as a matter of law because plaintiffs, having dismissed by way of stipulation the declaratory judgment action against the lessor, Chiappetti, had terminated the lease by agreement. Defendant argues that the trial court should have permitted proof by the sworn pleadings in the declaratory judgment action of an accord and satisfaction. We fail to see how the dismissal by way of stipulation of plaintiff's declaratory judgment action against Chiappetti is any basis for the issuance of a directed verdict in favor of defendant in this action. As indicated by plaintiffs in their brief, an accord and satisfaction does not embrace or operate as a bar with respect to matters not contemplated by the agreement (*St. Louis, Vandalia & Terre Haute R.R. Co. v. Hurst* (1887), 25 Ill.App. 98), and as a general rule an accord and satisfaction does not operate for the benefit of third persons. (*Schwarz v. Cooke* (1917), 207 Ill.App. 310 (abstract opinion).) In the instant case, defendant was not a party to the declaratory judgment action and any cause of action OLFM had against defendant was in no way contemplated by the stipulation entered into the declaratory judgment action.

■■ Defendant finally argues that the trial court erred in not allowing into evidence the sworn pleadings in the declaratory judgment action in which Bevelheimer averred that he told Chiappetti numerous times that he wanted to renew the lease. It is a well-settled rule that admissions in a pleading are proper evidence against the party making them (*Wells v. Web Machinery Co.* (1974), 20 Ill.App.3d 545, 315 N.E.

2d 301) even if filed in a former action which was dismissed. (*Mey v. Gulliman* (1882), 105 Ill. 272.) In the instant case, however, Bevelheimer testified at trial that he had told Chiappetti that he wanted to renew the lease. Consequently, Bevelheimer's averments in the complaint for declaratory judgment were merely cumulative and the trial court's refusal to receive into evidence such sworn pleadings is not reversible error. However, on retrial of the cause as to the corporation, Oak Lawn Freezer Meats, Inc., we believe that, consistent with the general rule, the trial court should allow into evidence such sworn pleadings.

For the reasons above stated, the judgments in favor of Bevelheimer and Oak Lawn Freezer Meats, Inc., are reversed and the cause as to Oak Lawn Freezer Meats, Inc., is remanded for proceedings consistent with the views expressed in this opinion.

Judgments reversed; cause remanded.

DEMPSEY and MEJDA, JJ., concur.