**Alex KUSH, Plaintiff–Appellant,**

v.

**AMERICAN STATES INSURANCE CO., Defendant–Appellee.**

**No. 87–2238.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1988.

Decided July 22, 1988.

Andrew W. Brainerd, Brainerd & Bridges, Chicago, Ill., for plaintiff-appellant.

Christine L. Olson, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for defendant-appellee.

Before CUDAHY, FLAUM and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

This case grows out of a coverage dispute between an insured corporation and its liability insurer. Defendant American States Insurance Company ("American States") insured A. Kush and Associates, Ltd. ("Limited"), a privately-held Illinois corporation engaged in direct-mail sales, under an umbrella liability policy. Limited was sued in a New York state court for damages allegedly caused by improper advertising. American States asserted that the suit was outside the policy's scope; so it denied coverage and refused to pay Limited's defense costs. Limited filed suit against the insurer in federal court seeking a declaratory judgment and damages for alleged breach of the policy. That action is still pending; Limited has obtained partial summary judgment on some counts.

Plaintiff Kush is chairman of Limited and, according to the complaint, owns all its common stock. He brought this diversity action under Illinois law accusing American States of intentional infliction of emotional distress in its handling of Limited's claim. The court dismissed the complaint

for failure to state a claim, holding in the alternative that the claim was preempted by section 155 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, para. 767 (1985), and that the complaint failed to allege conduct sufficiently outrageous to constitute intentional infliction of emotional distress. Kush appeals and we affirm.

## I.

We review the district court's dismissal de novo, accepting as true all well-pleaded factual allegations and the inferences reasonably drawn from those facts. *See Forys v. United Food & Commercial Worker's Int'l Union,* 829 F.2d 603, 604 (7th Cir.1987). Like the district court, we look only to the complaint itself, disregarding plaintiff's attempts here and below to supplement that complaint with an argumentative and conclusory affidavit by his attorney. In particular, plaintiff urges us to consider the affidavit in light of the district court's improper reliance, in dismissing the action, upon discovery in the related case brought by Limited against American States. It is true that Judge Grady made a passing reference to "extensive discovery in this case" in his dismissal opinion. *Kush v. American States Ins. Co.,* No. 87 C 2164, mem. op. at 9 (N.D.Ill. July 17, 1987) [available on WESTLAW, 1987 WL 14612]. At that point no discovery had been undertaken in this case, although it was ongoing in the related breach of contract case, which was pending before the same judge. Reference to that discovery was error; nonetheless, the error is harmless. A close reading of the opinion shows that Judge Grady relied on the discovery only to support his belief that allowing leave to amend would not be productive. The discovery did not influence his determination that the complaint failed to state a claim. In any event, the remedy for the error of improper reliance on certain discovery would not be for us to consider other material that on its own merits was properly excluded. That would only compound the problem. We review the complaint's sufficiency de novo and may determine its merit (or lack thereof) for ourselves, our judgment untainted by the district court's mistake.

The complaint alleges that in October 1980 Limited purchased several American States insurance policies, including the "Super Shield Umbrella Policy" at issue here. That policy insured Limited against liability arising out of its advertising activities. In December 1983, Limited was sued in New York federal district court. Some claims in that case involved "advertising activities" within the policy's scope.

Limited advised American States' agent of the suit's pendency in January 1984. The agent informed the insured that the New York claims were outside the scope of the policy, and that therefore American States had no duty to defend Limited in the action or to indemnify the company for any damage award. The agent reiterated this denial of coverage three times during 1984.

During or after February 1985, plaintiff and his attorney (presumably both representing Limited, since plaintiff was not insured under the policy) met on several occasions with representatives of American States to discuss the coverage dispute. American States continued to deny coverage and a duty to defend until October 1985, allegedly hoping to gain negotiating leverage by virtue of the financial cloud cast over Limited by the New York suit, and by "the personal emotional and physical distress this suit and defendant's conduct were causing plaintiff." At some point during these events, Kush suffered a heart attack and was hospitalized. Eventually, American States tendered a defense, but the complaint alleges the insurer only did so on "inequitable and unreasonable terms." Finally, it alleges in conclusory fashion that American States continued its "effort to defraud Limited" by committing eight unspecified improper claims practices and tendering false defenses in the related breach of contract case. Kush asserts that American States knew or should have known that these acts would cause him severe emotional distress and disabling illness. He asks for ten million dollars in compensatory damages.

## II.

■ This case has several fatal flaws. The first and perhaps most obvious question is whether Kush can bring the action at all. Kush, after all, was not American States' insured. The insurer allegedly had a duty to defend and owed coverage to Limited, but it owed no such duties to Kush. The complaint alleges a run-of-the-mill coverage dispute between an insurer and its insured. Kush was not a party to that dispute.

This view of the case is confirmed by close examination of the complaint. All of the actions alleged with particularity were aimed at Limited, not at Kush. Kush recognizes this when he begins the key paragraph, a list of alleged tortious acts, with the allegation that the actions were undertaken "[i]n support of [defendant's] effort to ... defraud *Limited.*" Complaint at 4 (emphasis added). At another point, Kush states that American States "intended ... to derive an unlawful and unconscionable advantage in its ongoing discussions and negotiations with Limited." *Id.* Any harm to Kush was incidental to the central dispute between the insurer and Limited.

The lack of any direct relationship between Kush and American States presents an insuperable hurdle to his case. In order to sustain an emotional distress claim, Kush must show a relationship between American States and Kush individually such that American States has "actual or apparent authority over [Kush] or power to affect [his] interest." *McGrath v. Fahey,* 163 Ill.App.3d 584, 117 Ill.Dec. 304, 307, 520 N.E.2d 655, 658 (1st Dist.1987) (citing *Public Fin. Corp. v. Davis,* 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976)). Putting aside for the moment the question whether American States' conduct was sufficiently outrageous to give rise to a tort claim, *see infra* p. 1386 n. 4, Kush has not shown that American States possessed *any* direct power to affect his interests.

Kush was a shareholder of Limited, and all of the damages caused him result solely from his role as a shareholder. American States had no direct relationship with Kush. True, its actions could affect Limited's interests, but Limited is a separate entity from Kush. We are reluctant to find that every action detrimental to a *corporation* gives rise to a tort claim by each of the company's *stockholders.* That holding could quickly lead to absurd results. One has only to imagine the consequences of such a rule applied to the Texaco–Pennzoil imbroglio. All of the Illinois cases we could find were brought by policyholders or beneficiaries. Kush points us to no authority supporting his assertion that a shareholder of an insured corporation who is neither policyholder nor beneficiary may bring an emotional distress claim against an insurer. We find no reasoned basis for taking that unprecedented step today.

Our holding is supported to some extent by traditional shareholder standing rules. In Illinois, as in other jurisdictions, the general rule is that "a stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation." *Twohy v. First Nat'l Bank,* 758 F.2d 1185, 1194 (7th Cir.1985). Illinois cases construe this rule strictly, allowing for very few exceptions. Generally, courts allow a shareholder to sue only where there is a direct injury to the shareholder in his or her individual capacity, independent of any duty owed the corporation. *See Continental Ill. Nat'l Bank & Trust Co. v. Stanley,* 585 F.Supp. 1385, 1388 (N.D.Ill. 1984); *Poliquin v. Sapp,* 72 Ill.App.3d 477, 480, 28 Ill.Dec. 615, 618, 390 N.E.2d 974, 977 (4th Dist.1979); *Zokoych v. Spalding,* 36 Ill.App.3d 654, 663, 344 N.E.2d 805, 813 (1st Dist.1976).

One exception to that rule might conceivably be applicable here. "[T]he separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights." *Bevelheimer v. Gierach,* 33 Ill.App.3d 988, 992–93, 339 N.E.2d 299, 303 (1st Dist.1975). However, as we have shown above, no exceptional circumstances are present here. Application of the general rule would not

impede proper enforcement of Kush's rights, since the law governing emotional distress claims and the shareholder standing rules are mutually reinforcing in this instance, both cutting against allowing Kush to maintain this action. We need not find that Kush lacks standing; that is a difficult question given the complexities of the shareholder standing rules. We merely discuss that doctrine because it supports our primary holding that we cannot disregard the corporate form by treating Kush as the de facto insured party.

Our holding may seem a bit harsh or, at least, counter-intuitive. After all, Limited is a closely held company and Kush would obviously be harmed greatly by a substantial injury to the company. His greater financial stake is such that, when Limited is sued, the impact on him is obviously greater than would be the case for an IBM shareholder if that company were sued. Still, the difference for present purposes between the IBM situation and that of Limited is one of degree, not one of kind. In Illinois at any rate, the law does not bend in favor of the sole shareholder. "[E]ven if all the stock of a corporation is owned by one person, the corporation is an entity different from that of the stockholder." *Bevelheimer*, 33 Ill.App.3d at 992, 339 N.E.2d at 303.

Indeed, in one sense the rule may be more rigid in a sole shareholder situation. Kush chose to operate his business in corporate form. That form gave him several advantages over operations as an unincorporated sole proprietorship, not the least of which was limitation of liability. In return, he gave up several prerogatives, including that of direct legal action to redress an injury to him as primary stockholder in the business. The Illinois courts understandably fear that the sole shareholder will try to live in both worlds, disregarding corporate form where it is convenient to do so. "[O]ne who has operated a corporate entity will not be permitted to disregard it to gain an advantage which under it would be lost." *Id.* at 993, 339 N.E.2d at 303. Kush may not move freely between corporate and individual status to gain the advantages and avoid the disadvantages of the respective forms. *See also In re Deist Forest Prods., Inc.*, 850 F.2d 340, 341 (7th Cir.1988).

Kush asks us to disregard the line between shareholder and corporation, in effect to treat him as the insured so that we might find American States had power to directly affect his interests. We are reluctant to do so here, where the direct duty was owed to the corporation alone and the allegedly tortious acts were directed only at the corporation. The fact that the company is closely held does not persuade us to deviate from the general rule.[1]

### III.

Even if we disregard the corporate entity and hold that Kush was the de facto insured, the claim runs into another wall: section 155 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, para. 767 (1985).[2] In

---

1. After oral argument, plaintiff's counsel directed our attention to *Eckenrode v. Life of America Ins. Co.*, 470 F.2d 1 (7th Cir.1972), to support his claim that Kush can show that American States has sufficient power to affect his interests despite the fact that he is not its policyholder. That case is inapposite for several reasons, the most important being that the plaintiff in that case was the policy's *beneficiary*. The insurer obviously owed a duty to the beneficiary and could directly and powerfully affect her interests. Kush, on the other hand, is not the policy's beneficiary, and his indirect interest as Limited's shareholder is not sufficient to support an emotional distress claim in this case.

2. Section 155(1) reads:
   Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
   (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
   (b) $25,000;
   (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

essence, the portion of that section relevant here allows a plaintiff to recover the lesser of $25,000 or 25 percent of the amount due under the policy, for "vexatious and unreasonable" delay in settling a claim.

To determine the effect of this statute, we must decide the degree to which the legislature intended section 155 to provide the exclusive remedy for claims arising from insurer delay. The Illinois Supreme Court has not decided this precise question, but several state appellate court cases guide our determination. Several courts have found that section 155 preempts claims based on an implied duty of good faith and fair dealing. *See, e.g., Kinney v. St. Paul Mercury Ins. Co.,* 120 Ill.App.3d 294, 298, 75 Ill.Dec. 911, 914, 458 N.E.2d 79, 82 (1st Dist.1983); *Tobolt v. Allstate Ins. Co.,* 75 Ill.App.3d 57, 70, 30 Ill.Dec. 824, 834, 393 N.E.2d 1171, 1181 (1st Dist. 1979); *DeBolt v. Mutual of Omaha,* 56 Ill.App.3d 111, 116, 13 Ill.Dec. 656, 661, 371 N.E.2d 373, 378 (3d Dist.1978); *see also Smith v. Metropolitan Life Ins. Co.,* 550 F.Supp. 896, 900 (N.D.Ill.1982). *But see Lynch v. Mid–America Fire & Marine Ins. Co.,* 94 Ill.App.3d 21, 49 Ill.Dec. 567, 418 N.E.2d 421 (4th Dist.1981); *Ledingham v. Blue Cross Plan for Hosp. Care,* 29 Ill.App.3d 339, 330 N.E.2d 540 (5th Dist. 1975).

More important for present purposes, an Illinois appellate court has, on preemption grounds, rejected a claim for intentional infliction of emotional distress. In *Combs v. Insurance Co.,* 146 Ill.App.3d 957, 100 Ill.Dec. 525, 497 N.E.2d 503 (1st Dist.1986), the court traced the history of section 155 and its predecessors and concluded: "The Illinois legislature, by virtue of these enactments, has clearly manifested its intent to keep this matter within its power and control." *Id.* at 962–63, 100 Ill.Dec. at 529, 497 N.E.2d at 507. The court therefore held that *"any* count alleging nothing more than the conduct proscribed by section 155 is pre-empted by the statute." *Id.* at 964,

100 Ill.Dec. at 530, 497 N.E.2d at 508 (emphasis in original); *see also Zakarian v. Prudential Ins. Co.,* 652 F.Supp. 1126, 1135 (N.D.Ill.1987); *Langendorf v. Travelers State Ins. Co.,* 625 F.Supp. 1103, 1106 (N.D.Ill.1985); *Anderson v. Mutual of Omaha Ins. Co.,* 594 F.Supp. 726, 728 (S.D. Ill.1984) (all reaching same result).[3]

Plaintiff asserts that *Combs* does not establish a blanket rule; rather the case implies that an emotional distress claim might not be preempted if it were based on conduct other than that covered by section 155. We agree, but that fact does not help the plaintiff here. As Judge Shadur noted in *Zakarian:*

> *Combs* teaches it is not the legal theory [plaintiff] asserts ... that determines Section 155's preemptive effect. Instead this Court must look beyond such legal theories to the predicate acts or conduct forming the basis for that claim. If the alleged conduct is within the scope of Section 155, the claim is preempted.

652 F.Supp. at 1136–37. Here, despite counsel's vehement protestations to the contrary, the core of the case is an allegation of "vexatious and unreasonable delay," the heart of section 155. American States refused to defend Limited or admit coverage. Kush alleges that the insurer intended a permanent refusal to pay, and that absolute refusal is beyond the scope of section 155. The difference, however, is illusory. Refusal is simply "a permanent and total 'delay.' " *Id.* at 1137. A company that declines coverage often intends never to pay, believing it is not·obligated to pay. If that belief is mistaken (or even if it were never sincere to begin with), section 155 sets the penalty.

This conclusion is lent some support by the Illinois Supreme Court's decision in *Robertson v. Travelers Ins. Co.,* 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983).

---

Ill.Rev.Stat. ch. 73, para. 767(1).

**3.** One early district court case found an emotional distress claim not preempted by the statute. *Strader v. Union Hall, Inc.,* 486 F.Supp. 159 (N.D.Ill.1980). That case was decided several years before *Combs* and the Illinois Supreme

Court's decision in *Robertson v. Travelers Ins. Co.,* 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983), which we find in point if not dispositive. We have found no case following *Strader's* analysis and feel it has been superseded by later Illinois decisions.

In that case, the court held that an emotional distress claim against a workers' compensation insurer was preempted by section 19(k) of the Workmen's Compensation Act, Ill.Rev.Stat. ch. 48, para. 138.-19(k), in conjunction with the statute's exclusivity provision. Section 19(k) closely parallels section 155 of the Insurance Code. It provides a set penalty for "unreasonable or vexatious delay of payment." The *Robertson* court held that the statute set the maximum penalty even for "malicious" delay. *Id.* at 447, 69 Ill.Dec. at 957, 448 N.E.2d at 869. Justice Simon's analysis is equally pertinent here: "[T]he legislature, anticipating that bad faith in delaying payment of benefits would occur on occasion, provided a 'quick, simple and readily accessible method' of resolving disputes over such payments." *Id.* at 448, 69 Ill.Dec. at 958, 448 N.E.2d at 870 (quoting *Everfield v. State Compensation Ins. Fund*, 115 Cal. App.3d 15, 20, 171 Cal.Rptr. 164, 166 (1981)). The analogy is imperfect, as the Workmen's Compensation Act contained an exclusivity clause, strongly buttressing the court's result. *See* Ill.Rev.Stat. ch. 48, para. 138.5(a). Still, the court's reasoning supports our result in this case.

Finally, we must address one last attempt to avoid section 155. Kush says section 155 does not apply to him because he is not an insured or a beneficiary. That argument is disingenuous. After all, American States argues the flip side of the coin—that Kush cannot bring the action at all because he is not the insured. As we noted above, in order to avoid that attack Kush must show that at bottom he was the insured, that the insurer's actions were directed primarily at him. If he cannot show that, his action fails. If he can show that, section 155 must preempt his claims. The statute does not speak explicitly only to claims by an insured; rather, it is silent as to the plaintiff's identity. Perhaps the legislature acknowledged by this omission that it could not hope to foresee every conceivable plaintiff challenging an insurer's delay. In any event, that silence enables us to read the statute to encompass this obvious attempt to circumvent legislative policy.

Section 155 may not be perfect. It strikes a balance between the individual insured party's need for compensation and the broad societal interest in avoiding excessive damage awards that result in price increases to all policyholders, perhaps making some insurance prohibitively expensive for the average consumer. Kush may wish the balance struck another way, but he should address that argument to the legislature.

## IV.

We affirm the district court's decision. Kush is ensnared in a "catch–22." We believe he cannot bring an emotional distress claim because the only direct relationship was between American States and Limited. If we had found Kush's interests to be so factually indivisible from Limited's as to destroy the barrier between shareholder and corporation, we would have held the claim preempted by section 155 of the Insurance Code. The district court correctly dismissed the case with prejudice, since there is no way Kush can redraft the complaint to save the cause. Because we decide the case on slightly different grounds than did Judge Grady, we do not reach his alternative holding that the complaint fails to allege conduct sufficiently outrageous to state an emotional distress claim.[4]

AFFIRMED.

---

4. We do, however, note in passing that the vast majority of Illinois cases have found this sort of insurer conduct not sufficiently outrageous as to state a claim. *See, e.g., Tobolt*, 75 Ill.App.3d at 66, 30 Ill.Dec. at 830, 393 N.E.2d at 1177; *DeBolt*, 56 Ill.App.3d at 113, 13 Ill.Dec. at 659, 371 N.E.2d at 376; *see also Smith*, 550 F.Supp. at 901. *But see Eckenrode*, 470 F.2d 1.